514 A.2d 959

Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Petitioner *v.* Independent State Stores Union, Respondent.

Argued May 15, 1986, before Judges MACPHAIL and COLINS, and Senior Judge ROGERS, sitting as a panel of three.

*Frank P. Clark,* Assistant Counsel, with him, *John D. Raup,* Chief Counsel, for petitioner.

*Kimber L. Latsha, Killian & Gephart,* for respondent.

OPINION BY JUDGE MACPHAIL, September 3, 1986:

The Pennsylvania Liquor Control Board (Board) appeals from an arbitrator's award resolving the employee grievance of Albert McCardle. We affirm the arbitrator's award.

On July 13, 1984, Mr. McCardle was suspended from his position as a General Manager 1B at a State Store in Bridgeville pending investigation of charges related to falsification of records and manipulation of Commonwealth merchandise and funds. On August 23, 1984, the suspension was affirmed and Mr. McCardle was discharged. Mr. McCardle has never denied that he

committed the acts the Board claimed he committed; he claims, however, that his behavior was caused by a mental condition which compelled him to commit those acts. In accordance with the terms of a Memorandum of Understanding between the Board and the Independent State Stores Union (Union) and the mandatory arbitration provisions of the Public Employe Relations Act (PERA),[1] the grievance was submitted by the consent of the parties to "final and binding" arbitration.[2] On August 13, 1985, the arbitrator made an award reinstating Mr. McCardle as a Clerk II in accordance with the Union's request for a temporary demotion so that Mr. McCardle could prove himself capable once again to work in the board's employ.

Paragraph 15-A of the Memorandum states that "[t]he Commonwealth shall not demote for disciplinary reasons, suspend, discharge or take any other disciplinary action against any manager without just cause."[3] The issue presented to the arbitrator, as agreed to by the parties, was as follows: "Was the Grievant dismissed for just cause, and if not, what shall the remedy be?"

The resolution of this case can be arrived at largely by keeping in mind the very limited scope of judicial review of arbitrators' decisions. Our Supreme Court has made clear that the "essence test" applies to our review of an arbitrator's award pursuant to Section 903 of PERA; an arbitration award must be upheld if it can in any rational way be derived from the collective bargaining agreement in light of language, context and other indicia of the parties' intention. *Pennsylvania State Edu-*

---

[1] Section 903 of the Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.903.

[2] The Memorandum of Understanding states at paragraph 17: "The decision of the arbitrator shall be final and binding on both parties." R.R. at 8a.

[3] R.R. at 4a.

*cation Association v. Appalachia Intermediate Unit 08,* 505 Pa. 1, 476 A.2d 360 (1984); *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977). In *Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981), our Supreme Court said that

> [t]he essence test requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court.

*Id.* at 520-21, 424 A.2d at 1312-13.

The Board argues that the arbitrator's award is not derived from the "essence" of the Memorandum of Understanding. We disagree. In *Mifflin County v. American Federation of State, County and Municipal Employees,* 73 Pa. Commonwealth Ct. 138, 457 A.2d 236 (1983), an arbitrator found that the county had violated provisions of a collective bargaining agreement which prohibited the discharge of an employee without just cause. The arbitrator ordered that the employee should be suspended for three months but be reinstated with back pay for the period he had been suspended in excess of the three months. This Court said:

> as the court of common pleas has recognized, '[t]he plain language of the Agreement does not allow for any interpretation but that the parties intended an arbitrator to make the final decision as to whether a dismissal or suspension was "just".' We believe it to be clear, therefore, that the arbitrator rationally drew his award from the 'essence of the agreement' and we are unable to disturb the arbitrator's award.

*Id.* at 142, 457 A.2d at 238. We believe the same is true in this case. The Memorandum of Understanding prohibits suspension or discharge without just cause and it provides that unresolved grievances shall be subject to binding arbitration.

The Board relies on *Philadelphia Housing Authority v. Union of Security Officers # 1,* 500 Pa. 213, 455 A.2d 625 (1983) in making its argument that the arbitrator exceeded his authority. In that case an arbitrator reinstated a security officer at a housing project who had convinced an elderly tenant to put $900 of his money in a joint bank account with the officer. The arbitrator held that the Authority did not have "just cause" under the collective bargaining agreement to discharge the officer. The arbitrator based his award in part because the officer had induced the tenant to part with his money by playing on their personal friendship and not by taking advantage of his position as a security officer. This Court upheld the award but our Supreme Court reversed saying:

> it is manifestly unreasonable to conclude that the Housing Authority could have intended to bargain away its absolute responsibility to ensure the integrity of its housing security force by discharging an officer who has defrauded one of the very people whom he is paid to protect.

*Id.* at 216, 455 A.2d at 627.

It is true that in the case at bar we are also dealing with an employee whose integrity is at question. There is, however, an additional mitigating factor. The arbitrator found that Mr. McCardle was not responsible for his actions because of his mental state. We do not see how the discharge of a mentally ill individual can be said to be for "just cause." In a humane society, public employers should foster the rehabilitation of such individuals. A discharge does not encourage rehabilita-

tion. We feel that the arbitrator's resolution of the problem was a prudent one. He held that the period from when Mr. McCardle was terminated until the time he started working in his new position should be considered a suspension with the period of time he underwent treatment to be converted to sick leave if he successfully completes his six month probationary period. While passing on the wisdom of the award is beyond our scope of review, we are constrained to comment that the arbitrator in this case acted wisely. His award most certainly meets the essence test.

The Board argues that at the time it terminated Mr. McCardle it did not know of his mental condition. This argument misses the point. The point is that Mr. McCardle was, according to the arbitrator, mentally ill. The arbitrator was justified in using information gleaned after Mr. McCardle's termination in determining whether or not just cause existed at the time the termination took place. Such determinations of mental state are, of course, made in the area of criminal law quite frequently.

The Board points out that the award of an arbitrator will be set aside where the arbitrator exceeds the scope of issues presented to him by the parties. *American Federation of State, County and Municipal Employees v. City of Beaver Falls*, 74 Pa. Commonwealth Ct. 136, 459 A.2d 863 (1983). It argues that the arbitrator did so in this case. We disagree. The arbitrator decided precisely what was before him: whether Mr. McCardle had been discharged for just cause and what the remedy should be if he had not been so discharged.

Finally, the Board maintains that the arbitrator erred in fashioning the remedy because he decided that Mr. McCardle should be reassigned to a position covered by a different bargaining unit for six months. We find nothing wrong with the arbitrator's remedy.

An arbitrator should be given latitude and flexibility in fashioning a remedy. *Danville Education Association v. Danville Area School District,* 78 Pa. Commonwealth Ct. 238, 467 A.2d 644 (1983). Nevertheless, an arbitration award may only require a public employer to do that which it could do voluntarily. *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969).

In this case, the Memorandum of Understanding itself contemplated such a demotion. Paragraph 15-A states that "[t]he Commonwealth shall not demote for disciplinary reasons . . . without just cause."[4] Paragraph No. 13 contemplates that a manager affected by a furlough "may bump laterally or down into another manager or clerk position if he/she has greater supervising unit seniority than the employe within the county with the least amount of supervisory unit seniority."[5] Paragraph 25 discusses requests for voluntary demotions.[6]

We conclude that the arbitrator's award was proper when scrutinized under our scope of review and must be affirmed.

### ORDER

The award of the arbitrator in the above-captioned case is affirmed.

---

[4] R.R. at 4a.

[5] Appendix C to Respondent's brief.

[6] Appendix B of Respondent's brief.