578 A.2d 48

**AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES LOCAL 2026, DISTRICT COUNCIL 83, AFL–CIO, Appellant,**

**v.**

**BOROUGH OF STATE COLLEGE, Appellee.**

Commonwealth Court of Pennsylvania.

Argued April 2, 1990.

Decided June 20, 1990.

522

Charles T. Joyce, with him, Alaine S. Williams, Walters, Willig, Williams & Davidson, Philadelphia, for appellant.

Robert E. Durrant, Pittsburgh, with him, Terry J. Williams, State College, Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh, for appellee.

Before CRAIG and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

PELLEGRINI, Judge.

Petitioner, American Federation of State, County and Municipal Employees, Local 2026, District Council 83, AFL–CIO (AFSCME) appeals from a Centre County Court of Common Pleas Order confirming an Arbitrator's Award which denied AFSCME's grievance filed on behalf of Borough of State College (Borough) Police Department (Department) Officer Robert P. Abernathy (Grievant). The grievance was filed from the Borough Council's approval of Grievant's dismissal from the Department for just cause.[1]

This grievance came about as a result of an Incident Report filed by Sergeant "R" of the Department indicating that the Grievant may have been involved in a possible firearms violation. The report named Grievant and Officer "G" of the Pennsylvania State University Police Department (Penn State P.D.) as being suspected of receiving and selling ammunition which was possibly stolen from the Washington D.C. Police Department (D.C.P.D.) Prior to his nineteen years of employment with the Department, Grievant was a police officer with the D.C.P.D.

About one month prior to the filing of the Incident Report against the Grievant, the Grievant filed a misconduct complaint against Lieutenant "O" and Sergeant "R", among others, for allegedly running an illegal lottery (a football pool) in the Department. The charge was referred to the District Attorney, and, eventually, the Attorney General of Pennsylvania. The Attorney General's Office, however, wrote an opinion letter stating it was not illegal to partic-

---

1. Article XXVI of the Collective Bargaining Agreement (CBA) between AFSCME and the Borough provides in relevant part:

*ARTICLE XXVI: Suspension, Demotion and Discharge*

The Employer shall not suspend, demote or discharge without *just cause.* If an employee alleges that the disciplinary action was without just cause, he may elect to appeal either through the grievance procedure ... or under the Civil Service provisions of the applicable State law. (Emphasis added.)

ipate in a football lottery. The incident nonetheless made the local newspapers and media. Arbitrators Award ¶ 17.

Following the filing of the Incident Report against Grievant, an extensive investigation was conducted by Sergeant "R" which included interviewing members of the Department and members of the Penn State P.D. and D.C.P.D. Pursuant to the investigation, Sergeant "R" had several boxes of ammunition allegedly sold by Grievant and tested at the FBI lab in Washington, D.C. The tests revealed that the ammunition all bore the same batch number and that at least part of that manufacturer's batch had been purchased by the D.C.P.D.

Sergeant "R" also filed several Supplemental Reports during his investigation. In these reports, Sergeant "R" indicated that he had obtained information from several different sources that Grievant had obtained ammunition from Officer "Ra" of the D.C.P.D., and had sold the ammunition at below market cost, and that the batch numbers had been torn or scraped off the boxes in which the ammunition came. The activity of selling the ammunition dated back to around 1976.[2]

Sergeant "R" presented his report to the Review Board of the Department's Internal Affairs Section (IAS) recommending that Grievant be dismissed. Sergeant "R" concluded that Grievant, being an experienced police officer, should have known the ammunition was stolen because of the suspicious nature surrounding the transactions, missing batch numbers and below market cost. Comparing Grievant's responses to all of the evidence he had received, Sergeant "R" concluded that Grievant was untruthful and was guilty of immoral and unbecoming conduct. The Review Board voted 3–2, with Lieutenant "O", the Chairman, casting the tie-breaking vote, to concur with Sergeant "R's"

---

2. On October 27, 1986, the United States Attorney's Office in Washington D.C. advised the Commander of the Internal Affairs Section of the D.C.P.D. that it was declining prosecution of Grievant for theft of ammunition from the D.C.P.D. On November 13, 1986, Sergeant "R" reported that a decision had been made to continue the matter as an internal investigation rather than a criminal matter.

recommendation for dismissal. Lieutenant "O" reported the results of the Review Board's deliberations to the Chief of the Department.

The Chief transmitted the results to the Borough Manager with the recommendation that the Grievant be terminated. The Chief reported that the Grievant's actions were a violation of Sections 6.01.00 (Unbecoming Conduct),[3] 6.02.00 (Immoral Conduct),[4] 6.03.00 (Conformance to Laws),[5] and 6.38.00 (Truthfulness)[6] of the Bureau's Policy, Rules and Regulation Manual. Additionally, the Chief stated that Grievant had previously been disciplined for untruthfulness and the totality of the evidence supported dismissal.

The Borough Manager subsequently transmitted the results to the Borough Council with the recommendation of dismissal. The Borough Council approved the dismissal effective May 15, 1987.

AFSCME, the Grievant's certified bargaining representative, filed a grievance pursuant to Article XXVI of the CBA alleging that the discharge was without just cause. The

3. 6.00.00 VIOLATION OF RULES—Officers shall not commit any acts or omit any acts which constitute a violation of any of the rules, regulations, directives or orders of the Bureau, whether stated in this Manual (General Order) or elsewhere.
6.01.00 UNBECOMING CONDUCT—Officers shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Bureau. Conduct unbecoming an officer shall include that which brings the Bureau into disrepute or reflects discredit upon the officer as a member of the Bureau, or that which impairs the operation or efficiency of the Bureau or officer.

4. 6.02.00 IMMORAL CONDUCT—Officers shall maintain a level of moral conduct in their personal and business affairs which is in keeping with the highest standards of the law enforcement profession. Officers shall not participate in any incident involving moral turpitude which impairs their ability to perform as law enforcement officers or causes the Bureau to be brought into disrepute.

5. 6.03.00 CONFORMANCE TO LAWS
A. Officers shall obey all laws of the United States and of any state and local jurisdiction in which the officers are present.

6. 6.38.00 TRUTHFULNESS—Upon the order of the Chief, the Chief's designs or a superior officer, officers shall truthfully answer all questions specifically directed and narrowly related to the scope of employment and operations of the Bureau which may be asked of them.

parties proceeded to arbitration. After a hearing, the Arbitrator issued an Award finding just cause for discharge and denying the grievance. AFSCME appealed this Award to the Centre County Court of Common Pleas, which, on August 9, 1989, confirmed the Arbitrator's Award. AFSCME's appeal from this Order is now before us.

AFSCME contends that the Centre County Court of Common Pleas erred in confirming the Arbitration Award because the Award was "manifestly unreasonable" because Grievant should not have been discharged based on unwarranted assumptions without support in the record and erroneously untrustworthy sources of information. AFSCME further contends that the Award was based upon "irregularities" during the investigation process; such as the inclusion of Sergeant "R" as the investigating officer and Lieutenant "O" as Chairman of the Review Board of the IAS, both subjects of the gambling investigation commenced by the Grievant, so as to render the award unjust and inequitable.

 The policy of the Commonwealth not only favors but mandates the submission to arbitration of public employee grievances "arising out of the interpretation of the provisions of a collective bargaining agreement." Section 903 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.903. *Neshaminy Federation of Teachers v. Neshaminy School District*, 501 Pa. 534, 462 A.2d 629 (1983). "Once it is determined the agreement encompasses the subject matter of the dispute, review of the arbitrator's finding is limited to whether the decision draws its essence from the collective bargaining agreement." *Id.*, 501 Pa. at 538, 462 A.2d 632.

No one contends that the Arbitrator was not in accord with the "essence test," first announced in *Community College of Beaver County v. Community College of Beaver County, Society of the Facility*, 473 Pa. 576, 375 A.2d 1267 (1977). The Supreme Court stated:

To state the matter more precisely, where the task of an arbitrator ... has been to determine the intention of the

contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the Judiciary if 'the interpretation can in any rational way be derived from the agreement, *viewed in light of its language, its context, and any other indicia of the parties intention ...*'

*Id.,* 473 Pa. at 593–594, 375 A.2d at 1275. (citation omitted) (emphasis added).

In challenges to an arbitration ruling, we have held that so long as the arbitrator's interpretation of the collective bargaining agreement is reasonable, this Court will not intrude into the domain of the arbitrator simply because our interpretation of the agreement might differ from that of the arbitrator. *American Federation of State, County, and Municipal Employees, AFL–CIO, District Council 87 v. Luzerne County,* 115 Pa.Commonwealth Ct. 604, 540 A.2d 1002 (1988).

██ AFSCME is asking this Court to extend the rationale set forth by the Supreme Court in *Philadelphia Housing Authority v. Union of Security Officers,* 500 Pa. 213, 455 A.2d 625 (1983), *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988), and *Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989), where our Supreme Court said that an arbitrator's decision can be overturned if "manifestly unreasonable."

AFSCME argues that the Arbitrator's Award was "manifestly unreasonable" because the conclusion that just cause existed for the Grievant's termination was based entirely upon a combination of unwarranted assumptions, findings unsupported by the record, and reliance placed upon egregiously untrustworthy sources of information. AFSCME contends that the Award was "unjustified by any terms that were or could properly have been contemplated by the parties to the collective bargaining agreement," *Philadelphia Housing Authority,* 500 Pa. at 216, 455 A.2d at 627, and thus, the award should be vacated.

We believe that AFSCME is misinterpreting the rationale behind *Philadelphia Housing Authority; County of Centre;* and *Liquor Control Board.* Those cases are an exception to the rule that arbitration awards are not to be disturbed if the arbitrator had the power under the agreement to decide the particular dispute. The doctrine that those cases enunciate is a policy that, where a Referee finds that a public employee engages in outrageous conduct that amounts to or almost rises to the level of criminality, and the conduct of those employees is toward a group of people that they serve, protect, or have a special relationship to, or is a breach of a special trust, then it is "manifestly unreasonable" to conclude that the public employer could have intended to bargain away its absolute responsibility to ensure the integrity of its agency, and thus, the arbitrator must affirm the dismissal once a finding of just cause has been made. *Philadelphia Housing Authority; County of Centre;* and *Liquor Control Board.*

If the facts fall within the doctrine enunciated above in *Philadelphia Housing Authority; County of Centre;* and *Liquor Control Board,* and if the arbitrator's sanction is "unjustified by any terms that were or could properly have been contemplated by the parties to the collective bargaining agreement," *Philadelphia Housing Authority,* 500 Pa. at 216, 455 A.2d 627, then the arbitrator's decision will be overturned.

AFSCME is asking us to extend this "manifestly unreasonable" doctrine beyond our review of the arbitrator's choice of sanction and into our consideration of the arbitrator's findings of fact. AFSCME would have us ask if such findings are "manifestly unreasonable" or to state it another way, "if the Award is supported by substantial evidence." The Supreme Court has not extended the "manifestly unreasonable" standard exception to the general rule that arbitration awards are not reviewable to an examination of the arbitrator's findings of fact, and accordingly, we also decline to do so.

Next, we must determine whether the Award was based on such "irregularities" during the investigatory process so as to render the award unjust, inequitable and unconscionable, and thus, it should be vacated.[7]

In an arbitration proceeding, an irregularity refers to the process employed in reaching the result of arbitration, not to the result itself. *Chervenak, Keane and Co. v. Hotel Rittenhouse Assoc.*, 328 Pa.Super 357, 477 A.2d 482 (1984). An irregularity as grounds for a vacation of an arbitrator's award has been defined by our Supreme Court as an "arbitration award which imports such bad faith, ignorance of the law and indifference to the justice of the result." *Allstate Insurance Co. v. Fioravanti*, 451 Pa. 108, 116, 299 A.2d 585, 589 (1973).

A review of the Arbitrator's decision indicates the Arbitrator fully considered AFSCME's concerns regarding the involvement of Lieutenant "O" and Sergeant "R" in the investigation phase of the current action. In his decision, the Arbitrator recognized AFSCME's arguments that Sergeant "R" should not have been the investigating officer and that Lieutenant "O" should not have chaired the Review Board because they were previously charged with gambling by the Grievant. Arbitrator's Award ¶ 40. The

---

7. This standard comes from Section 7314 of the Judicial Code which provides:

§ 7314 Vacating award by court

(a) General rule.—

(1) On application of a party, the court shall vacate an award where:

(i) the court would vacate the award under section 7341 (relating to common law arbitration) if this subchapter were not applicable.

42 Pa.C.S. § 7314.

Section 7341 of the Judicial Code provides:

§ 7341 Common law arbitration

The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing, or that fraud, misconduct, corruption or *other irregularity caused the rendition of an unjust, inequitable or unconscionable award.* (emphasis added.)

42 Pa.C.S. § 7341.

Arbitrator also recognized AFSCME's allegation that both of these officers "unfairly slanted the results of the investigation in their written reports, failing to mention inconsistencies and making conclusions when the evidence did not support those conclusions." Arbitrator's Award ¶ 41.

However, the Arbitrator, in making his determination of whether just cause existed, stated:

> The issue presented is whether or not there is just cause for Grievant's termination. That decision will be based on analysis of the facts and making credibility determinations where required. No reliance will be placed on conclusions set forth by individuals in written memoranda or stated by them in the arbitration hearing.
>
> In making this determination, the Arbitrator is constrained to point out that this and prior incidents in the Department have created a great deal of antagonism between certain individuals which was clearly evident during the hearing. The presence of officers from the PSU force in the proceeding provided sources of evidence somewhat removed from this atmosphere.

Arbitrator's Award ¶ 42.

The Arbitrator, with a clear understanding of the antagonism between the participants, held three days of hearings, during which numerous witnesses offered evidence and testimony and were also subject to cross-examination. At the conclusion of all the testimony and with the above considerations in mind, the Arbitrator denied the grievance. Not withstanding the possibility of an "irregularity" during the investigation process, an arbitrator's award will not be reversed or vacated where full and complete hearings were conducted, witnesses offered were permitted to testify and were subject to cross-examination, and all evidence and arguments were considered by the arbitrator. *Chervenak.* This is the case here.

The Arbitrator in this case concluded that the Department had met its burden of proof of establishing just cause for the dismissal of the Grievant. The Arbitrator found that Grievant's total conduct in this affair was improper

and its detrimental effect extended far beyond the Department. Arbitrator's Award ¶ 51. The Arbitrator based his decision on the well established standards of conduct for police officers in Pennsylvania [8] and the Department's Policy, Rules and Regulations Manual, both of were contemplated by the parties to the CBA under Article II–A which outlines Management Responsibilities.[9] The Grievant was well aware that the Department had the authority to establish standards of conduct for the officers and had done so through its Policy, Rules and Regulations Manual.

Since the Arbitrator's decision was based upon a reasonable interpretation of the CBA and the standards of conduct developed by the Department pursuant to the CBA, the Award draws its essence from the CBA, and thus, shall not be reversed.

Accordingly, we will affirm the Order of the Centre County Court of Common Pleas confirming the Arbitrator's Award.

## ORDER

AND, NOW this 20th day of June, 1990, the Order of the Centre County Court of Common Pleas dated August 9, 1989, is hereby affirmed.

CRUMLISH, Jr., Former President Judge, did not participate in the decision in this case.

---

**8.** *See In Re Zeber Appeal,* 398 Pa. 35, 156 A.2d 821 (1959), which describes the higher standard of conduct imposed upon police officers and other public service employees.

**9.** Article 11 of the CBA provides in relevant part:

*Management Responsibilities*

A. The parties agree that, except for limitations or other provisions of this Agreement, there are functions, powers, responsibilities and authority belonging solely to the Borough. Some of these, as pertain to the Borough, are ... *suspension, demotion or discharge of Police Officers for just cause or as provided by law; [and] the establishment and maintenance of standards of quality and performance.* (emphasis added.)