633 A.2d 1330

**PENNSYLVANIA STATE POLICE, Petitioner,**

v.

**The PENNSYLVANIA STATE TROOPERS'
ASSOCIATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 14, 1993.

Decided Nov. 10, 1993.

Joanna N. Reynolds, Asst. Counsel, for petitioner.
Anthony C. Busillo, II, for respondent.

Before DOYLE and SMITH, JJ., and LORD, Senior Judge.

SMITH, Judge.

The Pennsylvania State Police petitions for review of the October 23, 1992 award of an arbitrator sustaining in part the grievance filed by Trooper Scott Gibson (Grievant) upon his dismissal from employment with the State Police. The issue presented for review is whether the award of the arbitrator exceeded the bounds of his authority set forth in the collective bargaining agreement (Agreement) between the State Police and the Pennsylvania State Troopers' Association (Association).

## I.

The following are the facts as found by the arbitrator. From 1985 until his discharge, Grievant was employed by the State Police at the Meadville station. Grievant was also the proprietor of a business called Gibson Racing Enterprises and had received permission from the State Police to operate the business as supplemental employment. Grievant's enterprise began to cause him financial difficulty and he accumulated considerable debt, which resulted in a series of civil and criminal complaints against Grievant involving non-payment of debts and issuance of bad checks.

Following the issuance of a disciplinary action report (DAR), Grievant was advised by letters dated February 18, 1992 and March 26, 1992 that he had been accused of offenses which would subject him to court-martial proceedings. By letter dated March 9, 1992, Grievant also received a thirty-day suspension without pay as a result of a DAR dated September 16, 1991. Pursuant to the Agreement, Grievant was given the option of challenging the accusations either through court-martial proceedings or through the grievance procedure. Grievant chose the grievance procedure and filed grievances challenging the revocation of his supplemental employment approval, the proposed thirty-day suspension, and dismissal.

By letter dated June 11, 1992, Grievant was dismissed for alleged violations of State Police regulations. The letter specifically set forth the following incidents as cause for dismissal: in October 1991, Grievant issued a check in the amount of $152.40 payable to the district court knowing that there were insufficient funds in his personal account; in December 1990, Grievant issued a check in the amount of $40.00, which was returned for insufficient funds; Grievant failed to promptly obey orders made in connection with these incidents to furnish bank statements for his two personal accounts; in August 1991, Grievant failed to include in his investigation report information regarding the license registration of a suspicious vehicle observed near the scene of a burglary; Grievant failed to submit four reports in a timely fashion; and all of this conduct, coupled with Grievant's prior receipt of DARs, warranted Grievant's dismissal from the State Police.

Pursuant to the Agreement, the issue submitted to the arbitrator by the parties was whether there was just cause for the suspension and/or dismissal of Grievant and whether the remedy imposed was appropriate. In his opinion, the arbitrator noted that the various incidents for which Grievant was charged did not represent extremely egregious behavior and that "debts alone may not of themselves represent offenses calling for drastic discipline," Arbitrator's opinion, p. 10, and stated:

Further, one of the major problems in this case is the time lag between occurrence of the incidents requiring discipline until the actual discipline was imposed. One of the cardinal rules for the imposition of discipline is that management must discipline properly. A most important aspect of disciplining properly is that the punishment must be administered close to the time of the transgression (especially discipline leading to discharge) in order to reinforce the fact that the individual must correct his/her deviant behavior, and hopefully, the imposed discipline will help positively motivate the person to such an end. Imposing discipline at a much later date waters down or removes this "motivation-

al" aspect. In [Grievant's] case, punishments were imposed long after the incidents.

*Id.* at 10–11 (footnote omitted). The arbitrator concluded that the handling of the disciplinary actions imposed upon Grievant were flawed, noting several instances in which DARs were issued but disciplinary action was not taken until as much as a year later. The arbitrator labeled such delay "totally unacceptable from a progressive disciplinary point of view." *Id.* at 12.

Consequently, the arbitrator held that a debt owed by Grievant in the amount of $291.78 was not a matter requiring such drastic discipline as a thirty-day suspension; the lateness of the DARs and the delays in the imposition of discipline violated the principle of progressive discipline and were not timely; several of the DARs were less serious than claimed by the State Police; Grievant had not refused to obey orders as charged; and the State Police did not discipline properly for due process and just cause purposes. The arbitrator sustained the grievance in part, denied it in part, and directed the State Police to reinstate Grievant immediately without back pay but with full seniority. Furthermore, the arbitrator directed that the State Police expunge the discharge from Grievant's records and insert a final warning that continuing transgressions shall result in discharge, which warning must be issued to Grievant immediately upon his return. The State Police appealed to this Court.

## II.

This Court recently held that the proper scope of review of an arbitrator's award in cases of grievance arbitration involving Act 111 police personnel is the "essence test," which is specifically set forth in Section 7302(d) of the Uniform Arbitration Act, 42 Pa.C.S. § 7302(d). *See Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Trooper James Betancourt),* 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993). Section 7302(d)(1), (2) provides that where a person is required to submit a controversy to arbitration, a court in

reviewing the award shall "modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict."

Under the essence test, this Court is confined to determining whether the arbitrator's decision could rationally be derived from the collective bargaining agreement. *Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989). An arbitrator's award is to be respected by the courts if it represents a reasonable interpretation of the labor agreement between the parties. *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988). However, the Pennsylvania Supreme Court has adopted the caveat expressed in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), that an arbitrator is confined to the interpretation and application of the collective bargaining agreement and does not sit to dispense his or her own brand of industrial justice. *See Independent State Stores Union; Musser.* Subsumed within the essence test standard of review is the requirement that the arbitrator's interpretation of the agreement cannot be manifestly unreasonable. *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 137 Pa.Commonwealth Ct. 1, 586 A.2d 459 (1989), *aff'd*, 526 Pa. 301, 586 A.2d 355 (1991); *American Federation of State, County & Municipal Employees Local 2026 v. Borough of State College*, 133 Pa.Commonwealth Ct. 521, 578 A.2d 48 (1990).

The State Police argues that the arbitrator's award did not draw its essence from the Agreement because the arbitrator was limited by the terms of the Agreement to confine himself to the precise issue presented for review, but nevertheless went beyond the issue presented in addressing the timeliness of the actions by the State Police. Article XXVIII, Section 1 of the Agreement provides: "The arbitrator shall confine himself/herself to the precise issue submitted for arbitration and shall have no authority to determine any other

issues not so submitted to him/her." However, this section is prefaced by the provision that "[g]rievances are limited to matters involving interpretation of this Agreement *including matters of discipline.*" (Emphasis added.) The issue agreed upon by the parties and presented to the arbitrator was whether there was just cause for Grievant's suspension and/or dismissal and what the appropriate remedy shall be. Therefore, the arbitrator was specifically empowered by the issue presented and the Agreement to consider not solely the issue of just cause, as asserted by the State Police in its brief, but to further consider whether the discipline imposed was appropriate under the circumstances.

The State Police further argues that the arbitrator improperly considered whether Grievant was deprived of due process. However, a review of the arbitrator's decision reveals that despite making references to due process concerns, he held that the State Police violated accepted standards of progressive discipline in its manner of suspending and ultimately discharging Grievant. The arbitrator found that instead of disciplining Grievant in a timely manner for individual infractions as they occurred, the State Police accumulated a number of disciplinary matters in order to "pile it on" until it had enough to discharge Grievant. *See* Arbitrator's Opinion at 12. The arbitrator did not indicate that the State Police could not impose discipline merely because of the passage of time; rather, the arbitrator rejected the State Police practice of accumulating disciplinary matters and then using them for discharge. This resulted in a situation in which Grievant was not given an opportunity to correct his behavior, which is the foundation of progressive discipline as expressed by the arbitrator.[1]

1. In response to the State Police's contention that the arbitrator was without authority to address Grievant's due process rights because the issue was not presented to the arbitrator, it is well settled that a member of the Pennsylvania State Police has an enforceable property right in continued employment with the State Police, and accordingly, due process principles apply. *Lowery v. Pennsylvania State Police*, 108 Pa.Commonwealth Ct. 183, 529 A.2d 589 (1987). To the extent that the arbitrator considered such issues, he was within the scope of his authority to do so.

Furthermore, the State Police's argument that the arbitrator effectively imposed a statute of limitation on the disciplinary actions of the State Police is unfounded. No such language can be found in the arbitrator's decision, and it is clear that the arbitrator made no suggestion that the State Police is precluded from taking disciplinary action against an employee due solely to the passage of time. Rather, as noted above, the arbitrator's decision focused on the principles of progressive discipline.

■ In cases where, as here, a collective bargaining agreement fails to define just cause, it is well within the arbitrator's province to interpret the just cause provision. *McKeesport Area School Dist. v. McKeesport School Service Personnel Ass'n, PSSPA/PSEA*, 137 Pa.Commonwealth Ct. 28, 585 A.2d 544 (1990). In *McKeesport*, the employer school district discharged a groundskeeper on the basis of three violations, but the arbitrator determined that only one of these violations provided just cause for discipline and appropriately modified the discharge to a suspension. Further, the arbitrator considered factors such as the lesser degree of discipline imposed on others for similar offenses. This Court upheld the arbitrator's award. Similarly, in the matter sub judice, the arbitrator found that Grievant had not refused to obey orders and that certain incidents charged did not constitute just cause for the discipline imposed. Therefore, the arbitrator was within the scope of his authority in modifying the penalties imposed.

■ Finally, the State Police asserts that several of the arbitrator's findings and conclusions contain inconsistencies. The Supreme Court has held the fact that an arbitrator in analyzing a dispute "may have failed to properly perceive the question presented or erroneously resolved it, does not provide justification for judicial interference. Our inquiry ends once it is determined that the issue properly defined is within the terms of the agreement." *Leechburg Area School Dist. v. Dale*, 492 Pa. 515, 521, 424 A.2d 1309, 1313 (1981). Moreover, the arbitrator's award presents no irregularity that would provide grounds for vacation of the award because it does not

import bad faith, ignorance of the law, or indifference to the equities of the result. *AFSCME Local 2026.* Accordingly, the award of the arbitrator is affirmed.

## ORDER

AND NOW, this 10th day of November, 1993, the award of the arbitrator is affirmed.