582 A.2d 98

**DEPARTMENT OF the AUDITOR GENERAL, COMMON-WEALTH OF PENNSYLVANIA, Petitioner,**

v.

**COUNCIL 13, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 2, 1990.

Decided Nov. 7, 1990.

Petition for Allowance of Appeal Denied June 5, 1991.

Robert J. Schwartz, Deputy Chief Counsel, with him, Paul M. Yatron, Chief Counsel, Harrisburg, for petitioner.

Alaine S. Williams, with her, Charles T. Joyce, Walters, Willig, Williams and Davidson, Philadelphia, for respondent.

Before CRUMLISH, JR., President Judge, and CRAIG, DOYLE, COLINS, PALLADINO, SMITH and PELLEGRINI, JJ.

CRUMLISH, Jr., President Judge.

The Commonwealth, Department of the Auditor General (Auditor General) has filed petitions for review of arbitrators' decisions reinstating two department employees, Karol

Danowitz and John Weikel, who were dismissed.[1]   For the reasons which follow, we affirm the arbitrators' reinstatement awards.

Danowitz was hired as a Clerk I in 1980.   Weikel was hired as a clerk in the Files and Records department in 1983.   After one month on the job, Weikel, still a probationary employee, was terminated, subsequently reinstated pursuant to an arbitrator's award and continued working until 1989.   On February 1 of that year, both Danowitz and Weikel were instructed to report to the personnel director's office.   Each was then handed a letter signed by the Auditor General terminating them as of 5:00 p.m. that day,

> based on information gathered by my office as well as through cooperation with other governmental agencies as a result of an investigation into your involvement in a job buying and/or job promotion scheme in the Auditor General's Office.

The "scheme" referred to in the Auditor General's letter had earlier led to the indictment and guilty plea of Former Auditor General Benedict and the conviction on various charges of his Chief Deputy.

Pursuant to Section 903 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, No. 195, *as amended*, 43 P.S. § 1101.903, and its collective bargaining agreement, respondent Council 13, American Federation of State, County and Municipal Employees (AFSCME), filed grievances of both employees' terminations.   On December 15, 1989, Arbitrator Arvid Anderson upheld AFSCME's grievance and awarded Weikel's reinstatement with back pay and interest, upon finding that Weikel had no knowledge of or personal involvement in any job-buying arrange-

1. The Auditor General's petition for review of the award reinstating Danowitz was docketed in this Court at No. 90 C.D.1990; the petition for review of Weikel's reinstatement was docketed at No. 91 C.D.1990. Both arbitrators' awards set forth virtually the same grounds for reinstatement and the statement of questions presented in each petition were identical.   Consequently, when practical, we shall hereinafter refer to Danowitz and Weikel as "employees".

ment. He concluded that no just cause existed for Weikel's termination.

On December 27, 1989 Arbitrator Paul Klein upheld AFSCME's grievance over Danowitz and ordered her reinstatement on essentially the same grounds. Hence, the Auditor General's petitions were brought to this Court. Section 1501 of PERA, 43 P.S. § 1101.1501.

At the outset, we acknowledge that judicial review of an arbitrator's award under the "essence test" of *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977), is extremely circumscribed. We are limited to determining whether that award "represents a reasonable interpretation of the labor agreement between the parties." *County of Centre v. Musser*, 519 Pa. 380, 390, 548 A.2d 1194, 1198 (1988).

The Auditor General argues that the award cannot "in any rational way be derived from the [collective bargaining] agreement", *Commonwealth, Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 268, 553 A.2d 948, 951 (1989), because it denies the employer control of its work force in an area not covered by the collective bargaining agreement—that of terminating, for non-disciplinary reasons, illegally hired employees.

The Auditor General also contends that the award is void as against the public policy declaring the buying and selling of jobs to be illegal, and void and unenforceable because it extends contractual protection to an illegal transaction.

█ Article 29 of the collective bargaining agreement (Agreement) provides:

## Article 29

### Discharge, Demotion, Suspension and Discipline

Section 1. The Employer shall not demote, suspend, discharge or take any disciplinary action against the employee without just cause. . . .

The Auditor General has, by the terms of the Agreement, limited her powers over personnel actions. Nonetheless, she argues that her termination of these two employees, while certainly a personnel action, is not disciplinary in nature but is designed to remove from the Department employees who had been touched by a job-selling scandal. Thus, she maintains that the arbitrators' awards fail under the essence test because the Agreement's just cause provisions do not govern removal in this instance.

While it may be so that the Auditor General terminated the employees for reasons other than discipline, her power is limited by the terms of Article 29 to *all* discharges, not just disciplinary discharges. Nothing in Article 29's language suggests otherwise. There are no words to suggest that the term "disciplinary action" is inclusive of the other three actions listed—demotion, suspension, discharge. Were the phrase to read "... or take *other* disciplinary action," it could be argued that the Auditor General's power to remove employees was limited by the agreement only to the extent those removals (or demotions and suspensions) were disciplinary. That is not the case, however.

Rather, each of those actions could be taken for reasons unrelated to discipline. No matter what the motivation, as Article 29 is plainly read, just cause is the standard for all discharges, and the Auditor General may not effect terminations or the other enumerated personnel actions without just cause. We find nothing manifestly unreasonable in the arbitrators' interpreting the labor agreement according to this standard.

Further, the arbitrators in both cases found that neither employee had knowledge that their respective positions had been bought; the Auditor General admits their lack of knowledge. Therefore, each employee was found to have no involvement in a scheme to buy or sell jobs. The arbitrator also found that each had good job records and received regular, positive evaluations.

Because the arbitrators found no just cause for their dismissals, they found the collective bargaining agreement

had been breached and awarded reinstatement with full back pay. This decision can rationally be derived from the collective bargaining agreement and therefore must be upheld. *Independent State Stores Union.*

■ Nonetheless, the Auditor General would have us hold that the award is manifestly unreasonable because the Department of the Auditor General, as a governmental agency, cannot bargain away its legal responsibility to insure that its employees or officers do not violate the law in filling positions. We find the cases relied on by the Auditor General inapposite.

In *Philadelphia Housing Authority v. Union of Security Officers # 1,* 500 Pa. 213, 455 A.2d 625 (1983), a public housing security officer was reinstated after his termination for fraud and falsification. The Supreme Court overturned the arbitrator's award as manifestly unreasonable. In *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988), an arbitrator's reinstatement award was again overturned. There, a county corrections unit terminated two employees for continued harassment and abuse of an inmate. Most recently, in *Independent State Stores Union,* our Supreme Court held an arbitrator's reinstatement award to be manifestly unreasonable after a Liquor Control Board Store manager was terminated for theft of the store's proceeds.

In each case, however, it was the *employee's* conduct which was illegal and directly related to his role in the employing agency's function. Our Supreme Court noted in *Philadelphia Housing, County of Centre* and *Independent State Stores Union,* that a Commonwealth employer was not free to bargain away the right to discharge employees who engage in illegal conduct.

■ Here it was found that the employees neither engaged in any wrongdoing nor knew of that wrongdoing. Each was qualified and received positive job evaluations. There was no "bargaining away" of any obligation to

terminate employees who had committed work-related crimes.

Nor are we persuaded to void the arbitrators' award as against explicit public policy prohibiting government employee corruption. There is no question that the buying or selling of public jobs is a crime in this Commonwealth. The record indicates, and the Auditor General acknowledges, that employees who personally paid for jobs, or admitted awareness of payments in exchange for jobs were terminated. However, the Commonwealth's public policy is not offended by the reinstatement of *these* two employees, who were found to be innocent of any knowledge of criminal behavior or of wrongdoing itself.

Unlike in *Central Dauphin School District v. American Casualty Company*, 493 Pa. 254, 426 A.2d 94 (1981), the agreement herein does not bind the parties to engage in any unlawful conduct. The public policy of eliminating Commonwealth employee corruption is thus not sufficiently served by abrogating the Agreements' terms, and voiding of arbitrators' awards.

■ Finally, the Auditor General argues that, because their jobs were illegally given, the employees had no enforceable right which could be upheld in an arbitrator's award. She maintains that the employees appointments were legal nullities and therefore there is no legally enforceable right which can be vindicated by the arbitrators' award. Again, we disagree.

First, a property right to a benefit such as employment may be created by a statute, regulation or contract. *Sasko v. Charleroi Area School District*, 121 Pa.Commonwealth Ct. 220, 550 A.2d 296 (1988). Here, as member of the bargaining unit, the employees were certainly parties to the agreement, which no one contends is illegal and which grants them certain enforceable protections. One of those protections requires the employer to find just cause before terminating members of the bargaining unit.

Second, had there been a contract entered into, either collectively or individually, between these employees and the former Auditor General that required payment of money as an employment condition, *that* contract would be illegal and void *ab initio*. Such a contract was not the subject of the arbitrator's award, however. Here, there was an enforceable contractual right, embodied in the Agreement, to continued employment until such time as there is just cause to dismiss. The arbitrators in both cases adhered to this standard. We find nothing manifestly unreasonable in that interpretation of the Agreement. Accordingly, we shall affirm the awards in each case.

## ORDER

### No. 90 C.D.1990

The award of arbitrator Paul E. Klein, dated December 27, 1989, in the above captioned matter is affirmed.

## ORDER

### No. 91 C.D.1990

The award of arbitrator Arvid Anderson, dated December 15, 1989, in the above captioned matter is affirmed.

PALLADINO, Judge, dissenting.

As a matter of public policy, it is indefensible to prosecute and incarcerate the sellers of Commonwealth jobs and at the same time exonerate and reinstate employees who benefited from this clearly illegal activity.

The arbitrators clearly exceeded their authority by concluding that the Auditor General was without power to discharge the employees who held their positions as the product of political corruption. For this reason, I respectfully but most strenuously dissent.

The majority relies on the findings of the arbitrators that the employees were neither aware that their jobs had been purchased nor involved in the scheme to sell jobs. Based on

these findings, the majority concludes that no just cause existed to discharge the employees. The Auditor General has never asserted that the terminations were based on a finding of just cause, under Article 29 of the collective bargaining agreement. By focusing on the lack of just cause in its analysis, the majority sidesteps the thrust of the Auditor General's argument that she terminated the employees based on her management rights.

The collective bargaining agreement states, that except as modified by the agreement, *"[m]atters of inherent managerial policy* are reserved exclusively to the Employer. These include but shall not be limited to such areas of discretion or policy as ... *selection ... of personnel."* Collective Bargaining Agreement, Article 2, Section 1, Management Rights (emphasis added). This article further states: "The listing of specific rights in this Article is not intended to be nor should be considered restrictive or a waiver of any of the rights of management not listed and not specifically surrendered herein whether or not such rights have been exercised by the Employer in the past." Article 2, Section 2.

A public employer's management rights must be distinguished from the rights of a private employer whose managers may totally bargain away their power. *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988). In *Musser*, two prison guards were discharged for physically assaulting an inmate of a county prison. The arbitrator found that the prison guards' conduct constituted just cause for discipline. However, the arbitrator went on to find that the conduct did not rise to a level which justified discharge and reinstated the prison guards, imposing a four week period of suspension. Chief Justice Nix, writing on behalf of the supreme court, in affirming a decision of the Commonwealth Court which reversed the arbitrator's decision, concluded that:

The plain language of the Agreement's disciplinary provisions points to a conclusion that employee discipline, as a general matter, was to remain within the exclusive power

of management.... The arbitrator's power regarding disciplinary decisions is carefully circumscribed [by the Agreement]: he is restricted to deciding whether or not the requisite factual predicate exists for the imposition of discipline, and whether the disciplinary measures selected by the employer is in accordance with the terms of the Agreement.

*Musser*, 519 Pa. at 394, 548 A.2d at 1201. Once the arbitrator found that just cause existed for the employer to discipline the prison guards, he exceeded his authority by substituting his own discipline for that of the employer.

Similarly in *Philadelphia Housing Authority v. Union of Security Officers #1*, 500 Pa. 213, 455 A.2d 625 (1983), the supreme court vacated the decision of an arbitrator, which reinstated a security guard who had defrauded an elderly person who lived in a housing project where the security guard worked. Chief Justice Roberts, writing for the supreme court, held that:

Having found that [the security guard] had defrauded an elderly tenant and then lied about his conduct, the arbitrator was without authority to overturn the Authority's discharge of [the security guard]. As the arbitrator's decision to reinstate [the guard] was unjustified by any terms that were or could have been contemplated by the parties to the collective bargaining agreement ... the award of the arbitrator [must be] vacated.

*Philadelphia Housing Authority*, 500 Pa. at 217, 455 A.2d at 627.

In the present case, the Agreement clearly reserves the selection of personnel to the exclusive power of management. Article 2 of the Collective Bargaining Agreement. This power must include not only the power to hire employees but also to decide if a past decision to hire an employee was unlawful. The arbitrators' conclusions that the Auditor General lacked the power to rid the Department of the products of political corruption were unjustified by any terms that were or could have been contemplated by the parties to the collective bargaining agreement.

The Auditor General terminated the employees based on a determination that the employees were illegally hired. The arbitrators were limited to determining whether the employees were in fact illegally hired. Once the arbitrators found the reason for the discharges were factually correct, the matter fell within the exclusive management rights of the Auditor General, and the arbitrators had no further authority to determine the proper resolution of the matter.

The arbitrators' reinstatements of the employees infringed upon the right of the Auditor General, which was reserved by the Department under the collective bargaining agreement. These infringements by the arbitrators constitute excesses of authority which our supreme court has not permitted.

Additionally, I must disagree with the majority's conclusion that the employees have a property interest in their employment created by the collective bargaining agreement. A collective bargaining agreement is a contract between an employer and a certified representative of the employees which establishes the terms and conditions of employment. However, the agreement is not a contract of employment. "No one has a job by reason of a [collective bargaining agreement] and no obligation to any individual ordinarily comes into existence from it alone." *J.I. Case Co. v. National Labor Relations Board*, 321 U.S. 332, 335, 64 S.Ct. 576, 579, 88 L.Ed. 762 (1944).

No individual employee has a right under a collective bargaining agreement unless, the employee has an initial legal claim to his or her employment. Here, the employees have no legal claim to their employment because they were initially employed as part of an illegal job-buying scheme. Consequently, the collective bargaining agreement granted them no right to continue in their employment because at its inception their employment was tainted.

Accordingly, I would vacate the arbitrators' awards and uphold the discharges.