## DEPARTMENT OF THE AUDITOR GENERAL, COMMONWEALTH OF PENNSYLVANIA, Petitioner,

v.

## COUNCIL 13, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 1996.
Decided Jan. 22, 1997.

Before FRIEDMAN and FLAHERTY, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

The Department of the Auditor General, Commonwealth of Pennsylvania (Department), petitions for review of an arbitrator's award reinstating Department employee Kathleen Kilker (Grievant) as having been discharged without just cause.

Grievant was employed by the Department as an auditor.[1] On December 9, 1994, Grievant was on a field assignment accompanied by her field supervisor; the two were in overnight status using a state vehicle for transportation. Grievant drove the car to a restaurant where she consumed food and at least one alcoholic beverage. Shortly after Grievant left the restaurant with her supervisor, two Aston Township police officers pulled the vehicle over. The officers reported that they had observed the car weaving within its lane and twice crossing the center line. One of the officers also noted that Grievant had slurred speech and glassy, bloodshot eyes. Grievant agreed to take a field sobriety test, and the officers administered a "finger to nose" test, an "alphabet" test and a "finger counting" test.[2] Having determined that she failed all three tests, the officers arrested Grievant for driving under the influence of alcohol or a controlled substance. Grievant was not given a blood/alcohol test.[3]

On December 27, 1994, following an investigation, the Department discharged Grievant for misuse of a Commonwealth vehicle and failure to comply with section 808 A of the Department's Policy and Procedure Manual which prohibits an employee from operating a state vehicle under the influence of any controlled substance or alcoholic beverage.[4] (R.R. at 3a.)

Robert J. Schwartz, Deputy Chief Counsel, Harrisburg, for petitioner.

William H. Haller, Philadelphia, for respondent.

Robert S. Mirin, Harrisburg, for intervenor, Kathleen Kilker.

1. Grievant was terminated from the position of Auditor II, Bureau of Municipal Pension Audits, Department of the Auditor General.

2. The testing had to be stopped at least once due to interference from Grievant's supervisor, who had to be restrained and, ultimately, placed under arrest. (R.R. at 24a–25a, 29a.)

3. The record contains conflicting evidence with respect to the reason for this. According to the officers, they informed Grievant of the implied consent law and advised her that she did not have the right to speak to an attorney; when she persisted in requesting a lawyer before agreeing to submit to chemical testing, they deemed her behavior as a refusal. (R.R. at 13a, 15a.) On the other hand, Grievant testified that she later agreed to submit to the test at the police station, but that the authorities refused to give it to her.

4. This section provides:
 808 STATE VEHICLE REGULATIONS MUST BE STRICTLY FOLLOWED; FAIL-

The Department and the American Federation of State, County and Municipal Employees, Council 13 (AFSCME), the certified representative of certain Department employees, are parties to a collective bargaining agreement negotiated pursuant to the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301. On January 4, 1995, AFSCME filed a grievance on behalf of Grievant challenging the Department's action. AFSCME alleged that Grievant had been terminated in violation of Article 28, Section 1 of the parties' collective bargaining agreement, which prohibits disciplinary action against an employee without just cause,[5] and requested that Grievant be reinstated. The grievance was denied, and when the parties failed to resolve the dispute, the matter proceeded to arbitration.

At the hearing before the arbitrator, the Department presented testimony from the two officers present on the night of Grievant's arrest. In response, AFSCME and Grievant denied that Grievant was under the influence of alcohol at the time of her arrest. In support of this position, AFSCME presented evidence regarding the questionable reliability of the field sobriety tests used, particularly as administered by the officers here, and also submitted a Court of Common Pleas decision which held that Grievant was not guilty of driving under the influence of alcohol on December 9, 1994.

After considering the evidence presented, the arbitrator, although crediting the officers' testimony, found that the field sobriety tests and officers' observations of Grievant's condition were inadequate to prove that Grievant was driving a state vehicle "under the influence of alcohol." Thus, the arbitrator concluded that the Department failed to meet its burden of proof in establishing that Grievant was, in fact, guilty of the conduct charged. Accordingly, the arbitrator held that the Department did not have just cause to terminate Grievant and ordered that she be reinstated without loss of seniority, wages or benefits. The Department now petitions for review of that decision, arguing that the arbitrator's award is inconsistent with his findings of fact which, the Department claims, actually support the Department's action.

 Initially, we point out that our scope of review of an arbitrator's decision is extremely narrow. A decision will not be overturned if it draws its essence from the parties' collective bargaining agreement. *Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981). Under the "essence test," we are confined to determining whether the arbitrator's decision could rationally be derived from the collective bargaining agreement, *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989) (*PLCB*); that is, whether the arbitrator's award represents a reasonable interpretation of the labor agreement between the parties. *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988). Thus, courts will respect and uphold an arbitrator's award unless it is manifestly unreasonable. *Laborers International Union of North America, Local Union No. 964 v. County of Lawrence,* 128 Pa.Cmwlth. 216, 563 A.2d 224 (1989).

The Department contends that the arbitrator's award here was a manifestly unreasonable interpretation of the parties' collective bargaining agreement, relying on three cases in which our supreme court vacated arbitration awards on that basis: *PLCB; Musser;* and *Philadelphia Housing Authority v. Union of Security Officers # 1,* 500 Pa. 213, 455 A.2d 625 (1983).

---

URE TO COMPLY COULD RESULT IN DISCIPLINARY ACTION.
The following *are not* permitted:
A. Operating the vehicle while under the influence of *any controlled substance* or alcoholic beverage.
(R.R. at 18a.)

5. Article 28 of the collective bargaining agreement between AFSCME and the department provides in relevant part:

ARTICLE 28
DISCHARGE, DEMOTION,
SUSPENSION AND DISCIPLINE
Section 1. The Employer shall not demote, suspend, discharge or take any disciplinary action against an employee without just cause. An employee may appeal a demotion, suspension, or discharge beginning at the third step of the grievance procedure within 15 working days of the date of its occurrence....
(R.R. at 1a–2a.)

In *Philadelphia Housing Authority*, the supreme court vacated an arbitrator's award which reinstated a security officer employed by the Philadelphia Housing Authority; the Housing Authority had discharged the employee for allegedly defrauding an elderly tenant of the housing project where the employee worked. The arbitrator found that the employee had used his position of trust and confidence to obtain $900.00 from the housing project resident; however, despite these findings of dishonesty, the arbitrator reinstated the employee, believing that the loss of back pay during an eight month suspension was sufficient punishment where the offense apparently was based on a personal relationship. The court disagreed and held that it was "manifestly unreasonable to conclude that the Housing Authority could have intended to bargain away its absolute responsibility to ensure the integrity of its housing security force by discharging an officer who has defrauded one of the very people whom he is paid to protect." *Id.* at 216, 455 A.2d at 627. The court concluded that, having found that the officer had defrauded the elderly tenant and then lied about his conduct, the arbitrator was without authority to overturn the Housing Authority's discharge.

In *Musser*, the Centre County Prison Board discharged two prison guards for physically abusing a prison inmate. The arbitrator found that the employees had committed the acts which formed the basis for their dismissal and further found that their conduct toward the inmate was a clear violation of professional standards and state regulations necessitating disciplinary action of some type. Nonetheless, the arbitrator concluded that dismissal was inappropriate and ordered reinstatement of the employees following four-week suspensions. However, the court concluded that, where the arbitrator had decided that the employees' conduct presented just cause for some type of discipline, the nature of the discipline to be imposed remained within the exclusive province of the employer. Thus, the arbitrator exceeded the bounds of his power under the collective bargaining agreement by modifying the employer's decision of dismissal. Applying the rationale in *Philadelphia Housing Authority*, the supreme court recognized the public na-

ture of the employer, noting that, as a government institution, the prison board was charged with the governance and management of the county prison, and with the safeguarding of its inmates. The court reasoned that to carry out its duties, the prison board must have unfettered power to discharge an employee who is found to have subjected an inmate to physical abuse.

In *PLCB*, the court considered an arbitrator's award reinstating an employee of the Liquor Control Board who had been terminated from his position as a liquor store manager because he manipulated and falsified store records and misappropriated Commonwealth funds. In keeping with the evidence, the arbitrator found that the employee had committed the various dishonest acts which prompted his dismissal; however, concluding that the misdeeds were the result of mental illness from which the employee was recovering, the arbitrator determined that the Liquor Control Board did not have just cause for the discharge. Instead, the arbitrator reinstated the employee subject to various terms. Relying on *Philadelphia Housing Authority* and *Musser*, the supreme court set aside the award, noting that the Liquor Control Board was a government agency without the freedom of a private enterprise to relinquish powers inherently essential to the proper discharge of its function. Thus, because of the public nature of the enterprise, the court held that it was "manifestly unreasonable" to conclude that the Liquor Control Board had "bargained away" its responsibility to ensure the financial integrity of its operation by discharging an employee who was a proven thief. The court concluded that, having found that the employee committed the charged acts of impropriety, the arbitrator should have ended the inquiry and sustained the Liquor Control Board's action. The court rejected the arbitrator's efforts to fashion "his own brand of industrial justice" as outside the collective bargaining agreement.

The Department maintains that, through these cases, our supreme court has expressly recognized that public employers cannot bargain away the duty they owe to the public.

Applying this reasoning, the Department argues that, although an arbitrator has the authority to interpret the agreement between the parties, the arbitrator here exceeded that authority by interpreting the parties' collective bargaining agreement to deny the Department, a public employer, its inherent right to meet its obligations to the citizens of the Commonwealth. Further, the Department contends that, in reinstating an employee terminated for driving a state vehicle under the influence of alcohol, the arbitrator violated the public interest in deterring such conduct and in protecting the public from the serious risks to which it gives rise. Thus, the Department asserts that we should vacate the arbitrator's award as both in excess of the arbitrator's authority and contrary to public policy. We cannot agree.

Indeed, the three cases cited by the Department, *PLCB, Musser* and *Philadelphia Housing Authority*, offer us no guidance here because, in each of these cases, the supreme court vacated the arbitrator's award on grounds that it was "manifestly unreasonable" where *the arbitrator had found that the discharged employees had actually committed the acts with which they were charged, and for which they were terminated.*[6] Thus, where an arbitrator finds, as a matter of fact, that an employee engaged in the conduct charged by the employer, the arbitrator's

failure to sustain the discharge would be "manifestly unreasonable." However, by the same token, we have held that where, as here, the arbitrator does not find that the grievant engaged in the alleged wrongdoing, there is nothing unreasonable in reinstating that employee. *Department of the Auditor General v. Council 13, American Federation of State, County and Municipal Employees, AFL–CIO*, 136 Pa.Cmwlth. 87, 582 A.2d 98 (1990), *appeal denied*, 527 Pa. 654, 593 A.2d 425 (1991).[7]

Similarly, we are not swayed by the Department's argument that the arbitrator's award contravenes the well-established public policy against drunk driving. We recognize how important it is to deter driving under the influence of alcohol; however, we note that where the arbitrator found that Grievant was not guilty of this charge, the public policy behind, and the Department's interest in, ensuring that its employees do not harm the public by driving drunk is not implicated. *See Council 13* (concluding that the Commonwealth's public policy against prohibiting government employee corruption was not offended by the reinstatement of employees who were found to be innocent of buying and selling public jobs).

The thrust of the Department's argument, however, centers on its contention that the evidence presented at the hearing, and cred-

---

6. In *American Federation of State, County and Municipal Employees Local 2026, District Council 83, AFL–CIO v. Borough of State College*, 133 Pa.Cmwlth. 521, 578 A.2d 48, 51 (1990), we discussed the rationale behind these three cases, stating:

> The doctrine that those cases enunciate is a policy that, where a Referee *finds* that a public employee engages in outrageous conduct that amounts to or almost rises to the level of criminality, and the conduct of those employees is toward a group of people that they serve, protect, or have a special relationship to, or is a breach of a special trust, then it is "manifestly unreasonable" to conclude that the public employer could have intended to bargain away its absolute responsibility to ensure the integrity of its agency, and thus, the arbitrator must affirm the dismissal *once a finding of just cause has been made.* (Emphasis added.)

7. In *Council 13*, the Department made a strikingly similar argument to the one it makes here. In that case, we upheld arbitrators' awards reinstat-

ing two employees terminated by the Department for their alleged involvement in a job buying and/or job promotion scheme. As it does here, the Department relied on *Philadelphia Housing Authority, Musser* and *PLCB* to argue that the award was manifestly unreasonable because the Department, as a governmental agency, could not bargain away its legal responsibility to ensure that its employees and officers do not violate the law in filling positions. However, we concluded that *Philadelphia Housing Authority, Musser* and *PLCB* were inapposite, noting that in each of those cases, the employee's conduct was illegal and directly related to his role in the employing agency's function, whereas in the cases then before the court, the arbitrators found that the employees did not engage in or know of any wrongdoing. Although recognizing that a Commonwealth employer could not bargain away the right to discharge employees who engage in illegal conduct, we concluded that, where the employees had not violated the law, there was no question of the Department's "bargaining away" any obligation to terminate employees who committed work-related crimes.

ited by the arbitrator, should have compelled the arbitrator to find that Grievant was guilty of driving under the influence of alcohol. The Department points out that the arbitrator expressly credited the testimony of the police officers who arrested Grievant for that offense, including the officers' observations of Grievant's demeanor, the results of the field sobriety tests, and the fact that Grievant herself admitted consuming alcohol on the night in question. The Department contends that these facts are sufficient to demonstrate that Grievant's physical and mental capacities were impaired by alcohol in violation of the Commonwealth's automobile regulations, and maintains that the arbitrator exceeded his authority under the collective bargaining agreement by ignoring judicial precedent and improperly applying his own higher standard to hold that such impairment did not rise to the level of driving under the influence of alcohol.[8]

Specifically, the Department takes issue with the arbitrator's analysis of six DUI cases[9] which the Department introduced in support of its position. The arbitrator distinguished those cases from Grievant's situation by concluding that in all of these cases, "there was substantially more evidence of greater impairment and/or intoxication than in the case under review." (Arbitrator's Award at 7.) The Department asserts that, in making this distinction, the arbitrator clearly rejected the judicial standard set forth in *Commonwealth v. Griscavage,* 512 Pa. 540, 517 A.2d 1256 (1986), and applied in the DUI cases, as to what constitutes impairment amounting to driving under the influence of alcohol. According to the Department, the arbitrator substituted his own standard to establish that Grievant was not guilty of driving under the influence, and in doing so, improperly set that standard higher than the criminal law requires. Again, we disagree.

Contrary to the Department's assertion, we do not believe that the arbitrator imposed

8. In making this argument, the Department essentially asks us to apply the "manifestly unreasonable" doctrine of *Philadelphia Housing, Musser* and *PLCB* to a consideration of the arbitrator's findings of fact. In the past, we have declined to do this. *See AFSCME Local 2026; Trinity Area School District v. Trinity Area Education Ass'n,* 49 Pa.Cmwlth. 379, 412 A.2d 167 (1980). Indeed, as factfinder, the arbitrator was free to conclude that, while the officers' testimony with regard to Grievant was credible, it was, nonetheless, insufficient to satisfy the Department's burden. To accept the Department's argument otherwise would require the arbitrator to find the credible testimony of the police officers *per se sufficient* to prove that Grievant was driving under the influence of alcohol, thereby stripping the fact-finder of his fundamental responsibility to review and weigh the evidence and make factual findings based on that evidence.

Here, the Department relies on the three field sobriety tests administered by the police officers, the officers' observations of Grievant on the night in question and Grievant's own admission that she consumed alcohol as compelling a finding that Grievant was guilty of driving under the influence of alcohol. However, the arbitrator, properly exercising his role as factfinder, determined that this evidence was entitled to little weight because the tests were unreliable and the visual observations could be explained easily by other circumstances. (*See* Arbitrator's Award at 6–8.) As to Grievant's admission that she had taken a drink before operating her vehicle, the arbitrator found no evidence that the Depart-

ment's prohibition against driving under the influence of alcohol prohibited employees from drinking *any* alcohol prior to driving a state vehicle, a fact he deemed unfortunate. (Arbitrator's Award at 4.) Rather, the arbitrator determined that the phrase "operating a vehicle while under the influence of alcohol" contained in the personnel regulations "was intended to have the meaning the same prohibition has been given by the State's judicial authorities." (Arbitrator's Award at 4–5.) Thus, while giving due respect to the opinions of the officers, the arbitrator found that the evidence still was not sufficient to prove that Grievant had driven under the influence of alcohol. (Arbitrator's Award at 8.)

9. These cases are: *Commonwealth v. Ragan,* 438 Pa. Superior Ct. 505, 652 A.2d 925, *appeal denied,* 541 Pa. 650, 664 A.2d 540 (1995); *Commonwealth v. Miller,* 367 Pa. Superior Ct. 359, 532 A.2d 1186 (1987); *Commonwealth v. Little,* 354 Pa. Superior Ct. 546, 512 A.2d 674 (1986); *Commonwealth v. Hess,* 349 Pa. Superior Ct. 440, 503 A.2d 448 (1986); and *Department of Transportation v. Michener,* 119 Pa.Cmwlth. 21, 545 A.2d 1009 (1988).

We note that, while each of these cases makes mention of the use of field sobriety tests and police observations in connection with driving under the influence of alcohol, only *Miller* and *Ragan* addressed the sufficiency of this evidence. Although in both *Miller* and *Ragan,* the evidence was found sufficient to support a finding of driving under the influence, neither case held that any particular quantum of evidence would compel the factfinder to make such a finding.

a heightened burden on the Department here. In fact, the standard employed by the arbitrator is drawn directly from *Griscavage,* in which our supreme court set the standard of proof for DUI cases.[10] The arbitrator expressly noted that this judicial standard is very general, establishing only that "substantial impairment" need not be limited to extreme conditions of disability, but must be interpreted and applied pragmatically on a case-by-case basis. (Arbitrator's Award at 5.) Applying this test, the arbitrator carefully reviewed the DUI cases cited by the Department and determined that each of those cited cases presented substantially more evidence of impairment or intoxication than in the case under review, where the police descriptions of Grievant's erratic driving, appearance and behavior were not as strong evidence of being "under the influence." Considered in conjunction with the questionable accuracy and reliability of the field sobriety test results, the arbitrator found that the DUI cases did "not support a finding that an individual would be found to have been under the influence of alcohol on the basis of the quality of evidence presented to support the charges against the Grievant in this case." (Arbitrator's Award at 7.)

█ The arbitrator's task, as fact-finder, was to consider the evidence and determine whether the Department had established that Grievant was guilty of the conduct charged, so as to justify her discharge from employment under the parties' collective bargaining agreement. The arbitrator did this

and, based on the insufficiency of the evidence, ultimately found that the Department failed to meet its burden and, thus, terminated Grievant without just cause.[11] Because the arbitrator's award reinstating Grievant, based on a finding that Grievant did not commit the conduct for which she was terminated, is rational and draws its essence from the collective bargaining agreement between the parties, we affirm.

### ORDER

AND NOW, this 22nd day of January, 1997, the award of the arbitrator, dated June 25, 1996, is hereby affirmed.

---

10. That standard, quoted in full in the arbitrator's decision, provides as follows:

In order to establish appellee's guilt the Commonwealth had to prove: (1) that he was operating a motor vehicle, (2) while under the influence of alcohol to a degree which rendered him incapable of safe driving. ...[T]his Court has previously interpreted the phrase 'under the influence of alcohol' thusly:

The statute does not require that a person be drunk, or intoxicated, or unable to drive his automobile safely in traffic, but merely that the Commonwealth prove beyond a reasonable doubt that the defendant was operating his automobile under the influence of intoxicating liquor ... The statutory expression 'under the influence of intoxicating liquor' includes not only all the well known and easily recognized conditions and degrees of intoxication, but also any mental or physical condition which is the result of drinking

alcoholic beverages and (a) which makes one unfit to drive an automobile, or (b) which substantially impairs his judgment, or clearness of intellect, or any of the normal faculties essential to the safe operation of an automobile. [Citation omitted.]

Thus, substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Its meaning is not limited to some extreme condition of liability. *Griscavage,* 512 Pa. at 544–45, 517 A.2d at 1258.

11. However, the arbitrator noted that finding that the Department *did not prove* Grievant was driving under the influence of alcohol did not mean that she was not, in fact, doing so. (Arbitrator's Award at 9.)