**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,**
Appellant

v.

**TRANSPORT WORKERS UNION OF AMERICA, LOCAL 290.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 24, 2005.

Decided Aug. 11, 2005.

Shannon D. Farmer, Philadelphia, for appellant.

Richard G. Poulson, for appellee.

BEFORE: PELLEGRINI, J., LEAVITT, J., and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from a decision of the Court of Common Pleas of Philadelphia County (trial court) which confirmed the decision of an Arbitrator who determined that there was not just cause for the discharge of Bruce Boice (Grievant). We reverse for the reasons set forth below.

Grievant, a member of the Transport Union Workers of America, Local 290 (the Union), a labor organization under the Public Employe Relations Act, commonly known as Act 195,[1] worked as a maintenance manager for SEPTA. SEPTA is a party to a Memorandum of Understanding (Memorandum) with the Union which provided for a grievance procedure with final and binding arbitration. Grievant was terminated for violating policies regarding repairs, line delays and a confrontation with a co-worker. In August of 2003, the Union grieved Grievant's termination. In February of 2004, grievance arbitration commenced before the Arbitrator.

The question before the Arbitrator was "whether SEPTA had just cause to discharge the grievant, Bruce Boice? If not, what shall the remedy be?" On August 15, 2004, the Arbitrator issued a decision. The Arbitrator explained that one of the responsibilities of maintenance managers is to see that buses undergo "A Inspections" and "B Inspections" at regular intervals. During an inspection, a mechanic checks the bus and any needed repairs are noted on the back of the "A-card" or "B-card". Then, the bus is "held" until the repairs are completed. When the repair is complete, the mechanic signs the card certifying that the work has been done and

---

1. The Public Employe Relations Act (Act 195), Act of July 23, 1970 P.L. 563, *as amended*, 43     P.S. §§ 1101.101–1101.2301.

then the maintenance manager places the bus back into service by completing the work order that had been opened in the VMIS system (vehicle maintenance information system), which is a computerized system that allows SEPTA to track the maintenance work being performed on buses.

The most serious accusation against Grievant was that he knowingly concealed A-inspection cards in his locker at work and that, based on the information on those cards and in the VMIS system, he sent buses onto the street that were in need of important safety-sensitive repairs. On August 7, 2003, Grievant was called into a meeting with his superiors after they had found some A-cards sticking out of his locker. When Grievant opened his locker for an inspection, four A-cards were discovered. At the hearing, Grievant alleged that someone "set him up" by placing the A-cards in his locker. However, the Arbitrator rejected Grievant's contention in this regard. With regard to the A-cards that were found in Grievant's locker, the Arbitrator found that some listed safety-sensitive repairs that appear to have never been completed, including low front brakes, a loose steering shaft, a power steering problem, a transmission problem and a loose door stanchion. At the hearing, Grievant's superiors testified that the entries in the VMIS system indicate that Grievant was the maintenance manager for these buses and that he completed the work order in the system and returned the bus to service. Grievant apparently did this to "make the line" (meet the number of buses required for service). The Arbitrator found that:

The Union does not address the significance of the information on these A-cards; rather, it focuses its arguments on the question of whether or not the grievant had knowingly concealed them in his locker. However, that the griev-

ant "completed" a work order on the VMIS system as to five buses where there is evidence that the safety-sensitive repairs had not been completed is a serious breach of the grievant's very important responsibility to put only safe buses into revenue service. Although the grievant testified that he has never sent an unsafe bus out on the street for service, he did not offer testimony specific to these five work orders. Based on the record, the Arbitrator concludes that as to these five work orders . . . **the grievant failed to meet his responsibilities to ensure that safety-sensitive repairs were made on these buses before they were returned to service.**

(Arbitrator's Opinion, p. 27; R.R. at 45a; emphasis added). However, the Arbitrator concluded that this did not constitute just cause for the discharge of Grievant. Specifically, the Arbitrator found that:

Certainly, the Employer has demonstrated that in these instances, the grievant has failed to live up to the very important responsibilities of his supervisory position. His failure to follow SEPTA policy and procedure in the handling of buses on the "hold" sheet, in the procurement of buses to "make the line," in the supervision of his subordinate employees, in the completion of necessary documents and records, and in the oversight of the critical maintenance and repair functions for which he is responsible merit a lengthy suspension. The importance of his job for the protection of the safety of the riding public, SEPTA employees, and others using the region's thoroughfares cannot be overemphasized. On the other hand, the grievant deserves a meaningful opportunity to raise his job performance to the level reasonably required by the Employer before his fourteen-year career with SEPTA is ended. Moreover,

the Arbitrator does not believe that the grievant was guilty of any willful misconduct or wanton conduct, in violation of Item 14 of Policy 6.6.2 [of the S.AM. Policy/Instruction Manual].

(Arbitrator's Opinion, pp. 30–32; R.R. at 48a–50a). Accordingly, the Arbitrator reduced Grievant's discharge to a suspension without pay for six weeks. SEPTA appealed to the trial court which, by order dated December 3, 2004, affirmed the decision of the Arbitrator. SEPTA's appeal to this Court followed. On January 21, 2005, the trial court issued a decision in support of its order explaining that it affirmed the decision of the Arbitrator because the award was rationally derived from the terms of the Memorandum.

On appeal, SEPTA argues that the Arbitrator's award must be vacated because it threatens SEPTA's ability to perform its core function of providing safe public transit and is not rationally derived from the parties' Memorandum.

■ Initially, we note that our Supreme Court has emphasized that arbitration of labor disputes is final and binding and is mandated by the Legislature, thereby requiring a court reviewing an arbitrator's award to accede "great deference" to it. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA )*, 560 Pa. 135, 743 A.2d 405 (1999). The arbitrator's award is, therefore, final and binding unless the award does not draw its essence from the collective bargaining agreement. *Id.* This exception is called "the essence test" and it is a standard of review that requires a two-pronged analysis.

First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*Id.* at 150, 743 A.2d at 413.

■ In *Office of the Attorney General v. Council 13, American Federation of State, County and Municipal Employees, AFL–CIO*, 577 Pa. 257, 844 A.2d 1217 (2004), the parties stipulated to the same question to be determined by the Arbitrator in the instant case, that is, was there just cause for discharge and, if not, what shall the remedy be. The Supreme Court reasoned:

Based upon the clear terms of the collective bargaining agreement which prohibit termination without just cause and a grievance and arbitration procedure for settling disputes arising under the contract, it is beyond cavil that the issue submitted to arbitration, as properly defined, was encompassed within the terms of the collective bargaining agreement. Thus, we find that the first prong of the essence test is satisfied.

*Id.* at 270, 844 A.2d at 1225. Section II of the Memorandum states that "an employee may elect to pursue a grievance under the following procedures or through the appropriate appeals procedure outlined in the S.A.M. [supervisory, administrative and management] Policy/Instruction Manual (Manual)." (R.R. at 55a–56a). The Manual provides that SEPTA is authorized to discharge any employee for just cause. Because the Manual states that no employee shall be discharged without just cause and that the employer has the right to discharge for just cause, the issue as de-

fined for arbitration is clearly within the terms of the Memorandum. *Council 13.*

■ Next, we must determine if the Arbitrator's award can be rationally derived from the Memorandum. In *Council 13*, an employee of the Office of Attorney General was specifically found by the arbitrator to have committed unbecoming conduct in the nature of use of alcohol while off-duty and operation of an official vehicle while off-duty and while using alcohol. The arbitrator then found that although the employee committed the misconduct alleged, there was not just cause for termination because of three mitigating circumstances: the employee's long service with the employer, his subsequent rehabilitation and employer's imposition of dissimilar discipline under similar circumstances. This Court reversed the decision of the arbitrator. In reversing the Commonwealth Court, the Supreme Court rejected this Court's conclusion that once the arbitrator found that the employee had committed the conduct alleged, just cause for discharge was established and the arbitrator did not have the authority to modify the discipline. The Supreme Court also held that "we do not find that the award, reinstating an officer without back pay for off-duty misconduct has required the governmental employer to bargain away control over core powers that are essential to the proper discharge of the functions for which the governmental entity is responsible. *City of Easton.*" *Id.* at 273, 844 A.2d 1217.

Another recent Supreme Court decision that is helpful in our analysis of this case is *Greene County v. District 2, United Mine Workers of America,* 578 Pa. 347, 852 A.2d 299 (2004). In that case, the Supreme Court relied heavily on its decision in *City of Easton v. American Federation of State, County and Municipal Employees, AFL–, 756 A.2d 1107CIO, Local,* 447 562

Pa. 438, 756 A.2d 1107 (2000). In *Greene County,* the Supreme Court summarized its *City of Easton* decision as follows:

In *City of Easton,* the City of Easton terminated an employee for, *inter alia,* holding a second job with a security company, and submitting time sheets to both employers for the same hours worked to collect double pay. The employee grieved his dismissal. An arbitration board found that the employee had committed either a theft against the City itself or the security company while he was working for the City, but nevertheless reinstated the employee with back pay, finding that the City had failed to prove that the employee's misconduct provided just cause for his termination because the evidence presented failed to establish that the employee had stolen time from the City or from the security company. On appeal, we vacated the arbitration board's award. Initially, we reaffirmed the deferential essence test as the proper standard by which to review the award, but explained that **this usual degree of deference to be accorded an arbitrator's award is moderated in a situation in which the arbitrator's interpretation of the agreement led to the governmental employer relinquishing essential control over the public enterprise, i.e., those powers essential to its ability to discharge its functions.** *Id.* at 1111.

Specifically, we pointed out that the collective bargaining agreement between the parties included a schedule of discipline which provided that an employee could be immediately dismissed for "willful misconduct." The board determined that the employee was guilty of theft. Cognizant of our prior cases emphasizing the need for government to control its powers that are essential to the proper discharge of the functions

entrusted to that governmental body and recognizing that governmental authorities simply do not have the freedom of private enterprises to discontinue or bargain away the control over such functions, **we held that the arbitrator's determination could not be rationally derived from the collective bargaining agreement as it compelled a governmental entity to relinquish essential control over the enterprise.** *Id.* Thus we vacated the arbitrator's award.

*Greene County,* 578 Pa. at 361–362, 852 A.2d at 308.[2]

In *Greene County,* the trial court vacated the award of the arbitrator reinstating an employee because it found that it was manifestly unreasonable for the arbitrator to consider mitigating factors when a Children and Youth Services worker failed to maintain accurate and complete records. In reversing the trial court, this Court noted that the Supreme Court of Pennsylvania has criticized prior court decisions "for applying variations of the essence test in reviewing the arbitrator's decision and presumably has *retreated from its prior stance limiting an arbitrator's authority to overturn the discipline meted out by public employers* against employees who threaten their ability to perform their public duty." *Greene County v. District 2, United Mine Workers of America,* 778 A.2d 1259, 1264 (Pa.Cmwlth.2001) (emphasis added). As such, in *Greene County* we held that "[b]ecause the issue in this case, whether [the employer] had just cause to discharge [the grievant] falls within the terms of the CBA, and because the arbitrator's interpretation of just cause as its application in this case can rationally be derived from the terms of the agreement, affirmance of the trial court is not warranted even though we believe that the arbitrator's decision, though rational, is incorrect." *Id.* On appeal, the Supreme Court reversed our decision. Specifically, the Supreme Court held that:

> The rationale expressed in our decision in *City of Easton* is rooted, in part, in the unique nature of the public employer in our Commonwealth. *Id.* Unlike private sector employers, **public employers are ultimately responsible for the health, safety, and welfare of our communities.** Due to their unique nature and role, public employers must be able to perform the functions they are charged to carry out by our citizenry. Consistent with this status, our Court has recognized that public employers **cannot be compelled in arbitration to relinquish powers that are essential to the proper discharge of their functions.** *Id.* Thus, while as a general proposition, an arbitrator has broad authority to interpret an undefined provision regarding termination for just cause in a collective bargaining agreement, *Office of the Attorney General,* **to permit an arbitrator to interpret the agreement as to require reinstatement of an employee who was determined to have engaged in egregious misconduct that strikes at the very *core function* of the public enterprise would be to deprive the employer of its ability to discharge that essential function.** *City of Easton,* 756 A.2d at 1111–12. An arbitrator's award granting reinstatement in such a situation would not be rational and would therefore fail the essence test.

*Greene County,* 578 Pa. at 362, 852 A.2d at 308 (emphasis added).

**2.** Omitted from this procedural history is the fact that this Court affirmed the decision of the Arbitrator. Thus, in vacating the decision of the arbitrator, the Supreme Court also reversed the decision of this Court.

The case now before this Court is unlike *Council 13*, where the employee's misconduct occurred off-duty and the arbitrator's award, finding there was not just cause for the termination, was upheld by the Supreme Court. Rather, this case is more akin to *Greene County*, where the Supreme Court vacated the arbitrator's award reinstating the employee because the employee's misconduct deprived the employer of its ability to discharge its core functions. In this case, the Arbitrator found that the "grievant failed to meet his responsibilities to ensure that safety-sensitive repairs were made on these buses before they were returned to service." (Arbitrator's Opinion, p. 27; R.R. at 45a). The Arbitrator further found "that the grievant 'completed' a work order on the VMIS system as to five buses where there is evidence that the safety-sensitive repairs had not been completed is a serious breach of the grievant's very important responsibility to put only safe buses into revenue service." *Id.* Clearly, this misconduct strikes at the core function of SEPTA, which is to provide safe and reliable bus transportation. As such, the Arbitrator's award in this case deprives SEPTA of its ability to discharge its essential function and is therefore not rational. Consequently, the Arbitrator's award in this case fails the essence test.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, August 11, 2005, the order of the Court of Common Pleas of Philadelphia County docketed at No. 040901066 is hereby REVERSED for the reasons set forth in the foregoing opinion.