**CITY OF PHILADELPHIA, Appellant**

v.

**AFSCME, DISTRICT COUNCIL 33, LOCAL 1637.**

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 2006.

Decided May 18, 2006.

Publication Ordered Aug. 24, 2006.

Eleanor N. Ewing, Philadelphia, for appellant.

Nancy B. G. Lassen, Philadelphia, for appellee.

BEFORE: LEADBETTER, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

This is an appeal from an arbitrator's decision (Decision) of a dispute arising under a Collective Bargaining Agreement (CBA) between the parties. The arbitrator sustained AFSCME's (Union) grievance, and awarded it wages for work that the City of Philadelphia (City) assigned to non-bargaining unit workers in violation of the CBA. On appeal, the Court of Common Pleas of Philadelphia County (Trial Court) affirmed the award. The City appeals, arguing that a recent Pennsylvania Supreme Court decision precluded a nearly identical arbitrator's award as an impermissible punitive award against the City.[1] For the reasons that follow, we agree with the City and, therefore, reverse the Trial Court's decision.

This case marks the latest round of an ongoing dispute between the Union and the City regarding the City's use of police officers, who are non-bargaining unit employees, to perform work that, under Article 2.D[2] of the CBA and subsequent agreements, must be assigned to "Hostlers," who are bargaining unit members. Hostlers are non-police, civilian workers who care for the horses of the City's Mounted Police Unit (MPU). The Hostlers include the actual horse-care workers, as well as clerical workers who handle paperwork arising from the care of the horses. The dispute in this case arises because the City used police officers to perform work in two positions, clerk typist and horse-care worker, in place of bargaining unit members.

The Union grieved the City's practice as to these two positions.[3] The arbitrator conducted hearings and issued a Decision in favor of the Union. In his Decision, the arbitrator awarded several types of damages.

---

1. By Order dated April 28, 2005, Judge Feudale granted City's petition to appeal *nunc pro tunc* because the trial court had sent its decision to the wrong address.

2. This article provides that: "No other City employees, uniformed or non-uniformed shall perform work presently being done by employees in the District Council 33 bargaining unit."

3. The parties stipulated as to the issue that was before the arbitrator: "[W]hether the City of Philadelphia violated the [CBA] by assigning bargaining unit work to uniformed personnel and failing to maintain a clerical employee in the [MPU] and, if so, what shall be the appropriate remedy." (Arbitration Trans. at 4; Trial Ct. Op. at 4.)

The City challenges only one specific item of damage: the portion of the award that required the City to pay to the Union the **wages** union members would have received for working the two positions.[4] In making this award, the arbitrator noted that another arbitrator, named Kasher, had issued a similar award in an earlier arbitration, involving the same contractual language, parties and type of violation (Kasher Award). He noted that this type of award was an accepted practice between the parties.[5] The arbitrator did not award a specific sum of damages for the wages,

but left the issue for the parties to resolve themselves; he retained jurisdiction, however, in case they were unable to do so. The City appealed this portion of the award which the Trial Court affirmed.[6]

■■■■ The City appeals, relying primarily on a decision from the Pennsylvania Supreme Court, *City of Philadelphia, Office of Housing and Community Development v. American Federation of State, County and Municipal Employees, Local Union No.1971*, 583 Pa. 121, 876 A.2d 375 (2005) (*OHCD*), issued subsequent to both the arbitration and Trial Court decisions.[7]

---

4. In relevant part, the Award provides: "for distribution, as the Union so determines, a sum equal to the number of hours of Clerk Typist work improperly performed by non-bargaining unit members [i.e., Police officers,] on day shift and the number of hours of Hostler work improperly performed by non-bargaining unit members on the last out [third] shift times the overtime rate of pay for such work...." (Decision at 22.)

5. The applicable portion of the arbitrator's discussion follows:
   Any question of the propriety of such a monetary award has already been addressed by the history of arbitration decisions between these Parties finding such relief appropriate in cases of violation of Article 2.D.—an approach which has also been reflected in various provisions of the July 12, 1995 Settlement Agreement. Nor has any reason been shown to deviate in this case from that accepted practice between the parties.
   (Decision at 19.) The arbitrator offered some additional rationale and insight behind his award of wages, noting that:
   If, however, as a result of continued understaffing, bargaining unit work is assigned to non-bargaining unit personnel, then the City can expect to continue to be found in breach of the Agreement and can expect to continue to be found liable for monetary damages, thus resulting in a wasteful situation in which the City "pays twice" for the same work.
   (Decision at 21.)

6. In doing so, the Trial Court noted that both prongs of the essence test were met. As to

the first prong, whether the issue falls within the CBA's terms, the court concluded that the issue of staffing was clearly within the terms of the CBA, specifically Article 2.D. As to the second prong, whether the award is rationally derived from the CBA, the Trial Court concluded that:

> the context and history of the parties' disputes revealed that the monetary damages awarded by [the arbitrator] were both within, and rationally derived from, the CBA. Furthermore, the fact that identical sanctions had been imposed on the City in a similar dispute (without objection) substantiated the reasonableness of Arbitrator Jaffe's decision to again impose such sanctions for these violations.

(Trial Ct. Op. at 4.) Accordingly, the Trial Court affirmed the award.

7. Review of an arbitration award made under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101—1011.2301, requires the Court to apply the "essence test" as its standard of review. *Mifflinburg Area Educ. Ass'n v. Mifflinburg Area Sch. Dist.*, 555 Pa. 326, 724 A.2d 339 (1999). In applying the essence test, a court reviewing an arbitrator's decision must look at two questions: first, does the issue as properly defined come within the terms of the CBA; and, second, if so, is the award rationally derived from the CBA. *State System of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof. Ass'n (PSEA–NEA)*, 560 Pa. 135, 150, 743 A.2d 405, 413 (1999). Proper application of the essence test does not permit intrusion into the arbitrator's decision based

Preliminarily, we briefly discuss the *OHCD* case because it forms a central component of the arguments before this Court.

In *OHCD*, the City of Philadelphia and the union entered into a CBA that provided, *inter alia*, that union employees would perform housing inspections. For the preceding five years, the union had neither hired nor trained any union members to perform inspections. However, at the time the parties entered their CBA, the union had two members who could perform these inspections (Union Inspectors). Although the two Union Inspectors were employed full-time performing the inspections, the City entered into three competitively-bid contracts with non-union firms to also perform the inspections. The union grieved. The arbitrator awarded the union approximately $900,000, which represented the wages that 33 bargaining unit workers would have received for performing the inspections. *OHCD*, 583 Pa. at 125, 876 A.2d at 377.

This Court reversed the arbitrator's decision, and the Supreme Court affirmed, reasoning that:

In this case, the arbitrator based the damages award against a Commonwealth agency on wages paid to the hypothesized Union workers to repair the 'vitality' of the Union—the Union calculated the sum at "roughly $900,000." As the Commonwealth Court correctly noted, the Union would never have received these wages; *members* might have received those wages, but the Union itself would have received only additional dues from prospective new Union members. With only two qualified housing inspec-

tors in the Union at the time, who undisputedly remained fully employed throughout the period, it is speculative how many additional members could have been recruited into the Union to undertake this workload; the Union had not added any additional inspectors for the preceding five years. Accordingly, the award fashioned by the arbitrator would give the Union a windfall of almost $30,000 per current member. This did not make the Union whole, but impermissibly punished OHCD.

The arbitrator's award of punitive damages against OHCD, a Commonwealth entity, cannot stand because it exacts retribution on the shoulders of blameless or unknowing taxpayers who would bear the brunt of the award. Specifically, our Court in *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270, 1276–77 (1986), held that it is against the public policy of our Commonwealth to award punitive damages against a Commonwealth agency. Noting that government agencies have long been exempt from the imposition of punitive damages, *see Hermits of St. Augustine v. County of Philadelphia*, 4 Clark 120, 7 Pa.L.J. 124 (1847), our Court echoed the concerns of the United States Supreme Court that punitive damages imposed on a municipality were, in effect, a windfall to a fully compensated plaintiff and are likely accompanied by an increase in taxes or a reduction of public services, citing to *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 263, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). *Feingold*, at 1276–77.

on a court's conclusion that the award is manifestly unreasonable. *Pennsylvania Game Comm'n v. State Civil Serv. Comm'n (Toth)*, 561 Pa. 19, 27 n. 7, 747 A.2d 887, 891 n. 7 (2000). "[A]s a general proposition, an

award that is contrary to law will not satisfy the essence test." *Mifflinburg, 555 Pa. at 334 n. 6, 724 A.2d at 344 n. 6.* However, the court may modify or correct an award "[w]here the award is against the law...." *Id.*

**618**

*OHCD*, 583 Pa. at 125–126, 876 A.2d at 377–378 (record citation omitted). Accordingly, the Supreme Court ruled in favor of the City of Philadelphia and against the union.

In this appeal, the City argues that, per *OHCD*, as a matter of law, "the payment of wages to the Union represented a windfall completely divorced from economic loss" because no "existing [Union] member ... lost the hostler or clerk typist wages...." (Appellant Br. at 17.) Accordingly, under *OHCD*, the City argues that the award constituted punitive damages, which will be born by innocent taxpayers, and is thus impermissible against the municipality.[8] In response, the Union argues that the *OHCD* case "*did not* create a blanket rule that payment of money damages" to a union "was always an improper remedy." (Appellee Br. at 15–16.)

The Union argues that there are a number of factual differences between this case and *OHCD*. Most importantly, unlike in *OHCD*, the Union argues that the award in this case is directly correlated to the violations proven by the Union; the arbitrator noted a history of repeated violations, and left the amount of the award

open for further resolution between the parties. In contrast, the Union argues that in *OHCD*, the arbitrator noted no history of prior violations and fixed an amount for damages.

Additionally, the Union notes that its Local 1637 bargaining unit, which includes the Hostlers, represents some 850 civilian employees, in contrast to the significantly smaller bargaining unit of 33 in *OHCD*, such that any reward would not be like the $30,000 windfall for each bargaining unit member in *OHCD*.

The Union also argues that the City failed to challenge the Union's pursuit of Kasher Award remedies while the parties were before the arbitrator and, therefore, waived the argument. *Local 85 of the Amalgamated Transit Union, AFL–CIO v. Port Authority of Allegheny County*, 840 A.2d 506 (Pa.Cmwlth.2004) (finding that a party waived an issue by raising it for the first time in an amended petition to vacate an arbitration award filed with the common pleas court).[9] Finally, the Union argues that the decision draws its essence from the agreement—the issue was within the scope of the CBA and, given the histo-

---

**8.** As an alternate argument the City argues that, even without consideration of the *OHCD* case, awarding damages that do more than make the Union whole constitutes punitive damages and an award of punitive damages falls outside the essence of an agreement, absent clear contract language authorizing the arbitrator to award such damages. This argument essentially tracks dicta in the *OHCD* decision.

As another alternative argument, the City argues that the Trial Court erred in relying on an earlier arbitration award to justify imposition of similar damages in this case. The City acknowledges that precedent of this Court notes the stability of deferring to prior interpretations of identical contract provisions between identical parties. This same precedent, however, allows departure from the earlier decision when the earlier decision is "clearly erroneous or" changed circumstances under-

mine its ongoing viability. *School Dist. v. Philadelphia Fed'n of Teachers Local 3*, 168 Pa. Cmwlth. 671, 651 A.2d 1152 (1994). The City argues that the holding in *OHCD* serves as such a changed circumstance to merit departure.

**9.** The City filed a reply brief arguing, primarily, that the punitive damages argument was not waived because, per *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5 (Fox)*, 777 A.2d 1206 (Pa.Cmwlth.2001), a finding of waiver is inappropriate when a particular issue was not clearly defined during the arbitration and, here, the issue was not clearly defined until post-hearing briefs, which the parties had filed simultaneously. The City argues that the first opportunity it had to raise the issue was before the Trial Court, and that it did raise the issue at that time.

ry of similar violations, the Kasher Award is rationally derived from the CBA.[10]

The parties do not dispute that the first part of the essence test—that the issue is properly defined by the terms of the CBA—is satisfied. The parties had stipulated to the arbitrator that part of the issue before him was what an appropriate remedy would be if the City had violated the terms of the agreement.

The issue before the Court in this appeal involves the second component of the essence test—whether the award is rationally derived from the CBA. In this case, one of the Union's arguments is that, given the history of similar violations, the Kasher Award is rationally derived from the CBA.

■ It is a well established principle that an arbitrator's interpretation of the CBA, which may be based on a number of factors, is entitled to great deference. *Greene County v. District 2, United Mine Workers of America,* 578 Pa. 347, 852 A.2d 299 (2004); *Philadelphia Hous. Auth. v. Union of Security Officers,* 500 Pa. 213, 216, 455 A.2d 625, 626–27 (1983) (providing that "[i]t is well settled that an arbitrator's award will be upheld if the arbitrator's interpretation of the collective bargaining agreement is reasonable."). We have reiterated and applied this principle, noting that:

> our Supreme Court has emphasized that arbitration of labor disputes is final and binding and is mandated by the Legislature, thereby requiring a court reviewing an arbitrator's award to accede 'great deference' to it. The arbitrator's award is, therefore, final and binding

unless the award does not draw its essence from the collective bargaining agreement.

*Southeastern Pennsylvania Transp. Auth. v. Transp. Workers Union of America,* 880 A.2d 731, 734 (Pa.Cmwlth.2005) (citation omitted). However, this significant degree of deference is not without limits.

■ The Supreme Court, in a long-line of cases, has concluded that restrictions arising from the law preclude a government employer from bargaining away certain powers which, consequently, also preclude an arbitrator from issuing awards that contravene the law. *See, e.g., Office of Attorney Gen. v. Counsel 13, American Fed'n of State, County & Mun. Employees, AFL–CIO,* 577 Pa. 257, 844 A.2d 1217 (2004). By precedent, a government employer is precluded from bargaining away its power to fire an employee for that employee's misconduct, when that misconduct bears directly upon the performance of the government employer's public function. Id. Similarly, an arbitrator is precluded from interpreting the "just cause" provisions of a collective bargaining agreement in a manner that would run afoul of this prohibition. Id. As reasoned by the Supreme Court, the "usual degree of deference to be accorded an arbitrator's award is moderated in a situation in which the arbitrator's interpretation of the agreement led to the governmental employer relinquishing essential control over the public enterprise, i.e., those powers essential to its ability to discharge its functions."[11] *Greene County,* 578 Pa. at 361, 852 A.2d at 308 (2004).

---

**10.** The Union argues that if the Court found *OHCD* applicable to this case, the matter should be remanded for the arbitrator to fashion an appropriate remedy.

**11.** This principle is rooted in a number of Supreme Court decisions beginning with *Phil-*

*adelphia Housing Authority,* 500 Pa. at 216, 455 A.2d at 627 (concluding that "it is manifestly unreasonable to conclude that the Housing Authority could have intended to bargain away its absolute responsibility to ensure the integrity of its housing security

Similarly, in *OHCD*, the Supreme Court was faced with another instance which required a "moderat[ion]" of the deference owed the arbitrator's award. Similar to the *Philadelphia Housing Authority/Greene* line of cases, our Supreme Court has taken an established legal restriction that punitive damages may not be awarded against a government entity, *Feingold,* and concluded that arbitrators may not issue awards that contravene this restriction.[12]

■ In this case, we agree with the City that the Pennsylvania Supreme Court, in *OHCD*, barred the type of damages at issue in the within appeal. In this case, as in *OHCD*, the City violated the applicable CBA by assigning bargaining unit work to non-bargaining unit workers. Additionally, as in *OHCD*, there is no evidence that any of the bargaining unit members were less than fully employed. While the Union argues that filling the two positions with police officers deprived bargaining unit members of overtime work they could have incurred, the record contains ample evidence that the Hostler department was already stretched too thin because of insufficient staffing and because bargaining unit members, who had been employed for decades, had rightfully accrued, and utilized, significant leave time. None of this work deprived the bargaining unit members of their full-time hours, and the record casts significant doubt that any bargaining unit member was available to fill these hours. As in *OHCD*, the arbitrator, in awarding the Union the wages that *would have been* worked by *hypothetical* bargaining unit members in these positions, is not making whole any *actual* workers. As such, under the rationale of our High Court in *OHCD*, the damages are punitive. Under established precedent, punitive damages are not permissible against the City because "retribution [falls] on the shoulders of blame-

force by discharging an officer who has defrauded one of the very people whom he is paid to protect"), and culminating with *Greene County. See also City of Easton v. American Federation of State, County & Municipal Employees,* 562 Pa. 438, 756 A.2d 1107 (2000); Pennsylvania *Liquor Control Board. v. Independent State Stores Union (ISSU),* 520 Pa. 266, 553 A.2d 948 (1989); *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988).

12. In *OHCD*, although the issue unquestionably involved application of the essence test, the Supreme Court did not frame its analysis within those terms. The term "essence test" is not used and neither of the two elements are explicitly set forth.

We note that a similar situation occurred at the beginning of the governmental function line of cases. In *County of Centre,* the Supreme Court noted that "[a]lthough the decision in *Philadelphia Housing Authority* came after our adoption of the 'essence' test[, the decision] does not mention it; [nevertheless,] the considerations underlying the decision are a necessary part of the 'essence' standard in cases where government functions are not implicated." *County of Centre,* 519 Pa. at 396 n. 6, 548 A.2d at 1202 n. 6. Similarly, in this case, although the *OHCD* opinion does not mention the essence test, we find the considerations underlying the decision are a necessary part of the essence standard where, as in this case, non-Act 111, Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10, arbitration awards with punitive aspects are implicated. In disallowing the damages at issue, the Supreme Court essentially found the arbitrator's decision was not rationally derived from the agreement because the damages awarded violated public policy.

Justice Saylor's concurring opinion in *OHCD* supports this conclusion. Justice Saylor reasoned that although the majority opinion "avoid[ed] the facial tension between the vacating of the arbitration award under review and the essence test by characterizing the award as punitive .... [t]he majority's analysis strongly suggests a conclusion that the arbitration award under review is unreasonable, since the monetary damages were calculated in direct correlation to income to which the Union itself was never entitled...." *OHCD,* 583 Pa. at 127, 876 A.2d at 378 (Saylor, J., concurring).

less or unknowing taxpayers who would bear the brunt of the award." *OHCD*, 583 Pa. at 126, 876 A.2d at 378. Accordingly, we must agree with the City that the arbitrator's award of these damages is contrary to law, and cannot be sustained.

We are not persuaded by the Union's arguments that factual differences between *OHCD* and this case render the holding in *OHCD* inapplicable.[13] While we agree that there are some factual differences between the two cases, these differences do not alter the fact that the award of damages to the Union for hypothetical workers is not tenable. The factual differences may, arguably, render the degree of the punitive aspect *less* egregious in this case than in *OHCD*, but it still does not alter the underlying punitive nature of the award.[14] Neither does the repeated and continuing nature of the violations change the nature of the remedy itself.[15]

---

13. The Union argues that:

> [*OHCD*] concerned a small bargaining unit of 33 employees, and the arbitrator made an explicit finding that none of those employees had been economically harmed by the contractual violations in that case. By contrast, in the present case, the Arbitrator's findings were that repeated and continuing violations of the City's contractual obligations occurred over an extended period of time to the detriment of the Local 1637 bargaining unit (which in the City's Police Department, consists of approximately 850 civilian employees[) ].

(Union Br. at 17.) The Union also notes that, "in *OHCD*, the Arbitrator's monetary award was essentially an unrestricted sum payable to [Union], with no limits on how the money could be spent" but that, in this case, "the Arbitrator's Award clearly contemplated that the monetary award should be distributed to the bargaining unit members *adversely affected* by the City's contractual violations...." (Union Br. at 17.) At oral argument, Counsel for the Union reiterated that the damages were appropriate because Hostlers were denied work by the Police filling these positions.

The problem with this argument is that the arbitrator's decision, as well as the record, is replete with statements that the Hostler department was understaffed. The arbitrator specifically noted that "there is no dispute that the MPU is understaffed and in sore need of hiring additional Hostlers, particularly given the likely retirement in upcoming years of a number of the incumbent Hostler work force...." (Decision at 21.) Additionally, the arbitrator noted that "there was no dispute that the chronic understaffing created a situation where during much of 2000 and periods of 2001 ... there were several days each week when no Hostler at all was scheduled to work on [the] last out" shift—the shift in which the police officer work leading to this grievance had been taking place. (Decision at 20.) Additionally, the arbitrator notes that a police officer was assigned to this shift "to provide coverage and to allow the reassignment of a Hostler from that shift to other shifts (which also were understaffed)." (Decision at 21.) From this, it is clear that the award is not being made to make whole any Hostlers who were deprived of work. As in *OHCD*, there were no Union members deprived of work because of the City's assignment of non-union members to fill the shifts.

14. The language of the arbitrator's decision itself suggests the punitive nature of the remedy. The arbitrator noted that "[i]ssues of permanent staffing remain questions for the City to determine" and the arbitrator accordingly denied the Union's request for injunctive relief requiring the City to hire more Hostlers. (Decision at 21.) Nevertheless, as quoted earlier, the arbitrator sought to create, through the award, the "wasteful situation in which the City 'pays twice' for the same work." (Decision at 21.) As such, the award has all the dimensions of a fine issued against a party who is in violation of a law or regulation—it is designed to punish the wrongdoer and, in doing so, induce the wrongdoer into compliance.

15. This Court may not ignore a change in law to affirm an arbitration award because an earlier arbitrator, in a similar case, reached the same result. While an arbitrator's decision lacks precedential value:

> the prevailing view [provides that] when the prior decision involves the interpretation of the identical contract provision(s) between the same parties, stability in collective bargaining relations requires acceptance by an

With regard to waiver, even if the City had failed to raise the punitive damages issue before the arbitrator, *OHCD* marked a change in the status of the law that occurred after the arbitrator and Trial Court decisions, and rendered illegal, in this case, the arbitrator's award of Kasher type damages. The change in the status of the law after the earlier decisions allows this issue to be raised before our Court. *McCloskey v. Workmen's Comp. Appeal Bd. (J.H. France Refractories, Inc.)*, 501 Pa. 93, 98 n. 3, 460 A.2d 237, 239 n. 3 (1983) (stating general principle, gathered from various, non-worker's compensation cases, that "[i]t is well settled that changes in decisional law which occur during litigation will be applied to cases pending on appeal."). Therefore, we do not address the issue of waiver.[16]

Accordingly, because we conclude that the award of damages runs contrary to public policy, per *OHCD*, we conclude that the award does not rationally derive from the CBA.[17] For the above reasons, the decision of the Trial Court is reversed.

### ORDER

**NOW,** May 18, 2006, the Order of the Court of Common Pleas of Philadelphia County in the above captioned matter is hereby REVERSED.

arbitrator of the previous interpretation. There is general agreement that the refusal to apply an arbitrator's decision to a subsequent case of the same nature is justified, however, when the previous decision was clearly erroneous or when changed conditions call into question the continued application of the decision. *School Dist. of Philadelphia v. Philadelphia Federation of Teachers*, 168 Pa.Cmwlth. 671, 651 A.2d 1152, 1156 (1994) (citation omitted). In the within case, the arbitrator's decision to award Kasher damages is consistent with the principle in the first part of the quoted section. Our application of the *OHCD* case is consistent with the latter portion of this quoted section. *Cf. Zane v. Friends Hosp.*, 575 Pa. 236, 243, 836 A.2d 25, 29 (2003) (finding that the "coordinate jurisdiction rule [which] serves to protect the expectations of the parties, insure uniformity of decisions, [and] to maintain consistency in proceedings" by preventing one court from overruling the prior decision of a judge from the same court, may be departed from for "exceptional circumstances" which include "a change in the controlling law.")

16. Even if we were to address the waiver issue, we find the City's argument persuasive on this issue. The City raised the punitive damages argument on the first opportunity it could after receiving the Decision.

17. Based on our holding, we need not address the City's alternate arguments.