**PENNSYLVANIA STATE POLICE, Petitioner**

v.

**PENNSYLVANIA STATE TROOPERS ASSOCIATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 2006.

Decided June 30, 2006.

Joanna N. Reynolds, Asst. Counsel, Harrisburg, for petitioner.

Gary M. Lightman, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

The Pennsylvania State Police (PSP) asks us to expand the narrow certiorari scope of review applicable to matters arising under what is commonly known as Act 111,[1] to include review of those matters that are repugnant to public policy or shock the conscience of the court. We are bound by the Supreme Court's decision in *Pennsylvania State Police v. Pennsylvania State Troopers Ass'n (Smith & Johnson)*, 559 Pa. 586, 741 A.2d 1248 (1999), to deny the PSP's request. Accordingly, we affirm.[2]

The PSP employs Corporal Joseph Vazquez as a state trooper.[3] In January 2003, while on his lunch break at the state police barracks, Vazquez placed a custodial worker in a headlock and pointed his loaded service weapon at the worker's head. By all accounts, Vazquez and the custodial worker routinely engaged in horseplay at the police barracks and were doing so on this occasion.

Nevertheless, the custodial worker filed a civil rights action[4] against Vazquez, who requested the PSP to provide counsel pursuant to Article 27 of the parties' collective bargaining agreement (CBA). Relevant to this appeal is Section 2 of Article 27, which provides:

*Section 2* If a member is a defendant in a civil suit arising from the performance of his/her duties, the Commonwealth shall immediately furnish counsel and defend the member.

Arbitrator's Dec., 9/21/05, at p. 3.

The PSP denied Vazquez's request for counsel, indicating his conduct was malicious and intentional and did not occur during the performance of his duties. Vazquez obtained private counsel to defend the civil rights action and also filed a grievance protesting the PSP's decision not to represent him.

While the grievance was pending, the civil matter proceeded to trial, and Vazquez was found liable on all counts. The court awarded the custodial worker compensatory and punitive damages as well as counsel fees.[5] Vazquez incurred significant fees of his own for representation by private counsel.

Before the grievance arbitrator, the PSP claimed Vazquez intentionally admitted in

1. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–10.

2. For argument purposes only, this matter was consolidated with *Pennsylvania State Police v. Pennsylvania State Troopers Ass'n*, (Pa. Cmwlth., No. 1918 C.D. 2005, filed June 30, 2006).

3. The PSP discharged Vazquez due to his conduct. However, an arbitrator sustained Vazquez's grievance and reinstated him with a 30–day suspension without pay.

4. *See* 42 U.S.C. § 1983. To establish a prima facie case under Section 1983, a plaintiff must allege the action occurred "under color of state law" and the action is a deprivation of a constitutional right or a federal statutory right. *Jones v. City of Phila.*, 890 A.2d 1188 (Pa.Cmwlth.2006).

5. Article 27, § 3 provides the Commonwealth is responsible for judgments rendered against a member in job-related suits where the member acted within the scope and responsibility of his office. Arbitrator's Dec., 9/21/05 at p. 3. Consequently, Vazquez also grieved the PSP's refusal to indemnify him for the civil judgment. Significantly, the arbitrator denied Vazquez's grievance on this issue, and no appeal was taken.

the civil case he "acted under color of state law" so that the PSP would be responsible for his counsel fees pursuant to Article 27 of the CBA. However, the arbitrator rejected this claim based on private counsel's credible testimony the custodial worker established Vazquez acted under color of law at the time of the incident, and counsel could not overcome the custodial worker's proof.

■ The arbitrator further noted that historically, the phrase "arising from the performance of his/her duties" was broadly interpreted. Here, Vazquez was on his lunch break at the police barracks and used his service weapon in the incident. As such, the arbitrator stated it would be unreasonable to divide the work day into isolated incidents to determine when an employee was in the performance of his duties and when he was not.[6]

■ The PSP now appeals the arbitrator's decision, and extends another invitation to expand narrow certiorari. Narrow certiorari limits our review to questions concerning the arbitrator's jurisdiction, the regularity of the proceedings, an excess of the arbitrator's powers, and the deprivation of constitutional rights. *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995). The PSP asks that we expand narrow certiorari to also include review of those matters that are contrary to public policy or shock conscience of the court.

Some discussion of the development of the scope of review is appropriate. Until our decision in *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt)*, 159 Pa.Cmwlth. 489, 633 A.2d 1278 (1993), *rev'd*, 540 Pa. 66, 656 A.2d 83 (1995), we reviewed Act 111 grievance arbitration under the narrow certiorari scope of review. However, at the PSP's urging, we determined in *Betancourt* the appropriate scope of review in grievance arbitration was the "essence" test pursuant to the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7362.[7]

The Supreme Court reversed our decision in *Betancourt* and specifically held Act 111 grievance arbitration is reviewable under narrow certiorari. This holding was based, in part, on the decision in *City of Washington v. Department of Police of the City of Washington*, 436 Pa. 168, 259 A.2d 437 (1969) (interest arbitration). In *City of Washington*, the Court determined that despite Act 111's prohibition on appeals of arbitration awards, then-existing Supreme Court Rule 68½ provided narrow certiorari review where a legislative act prohibited appeals.

Thereafter, in *Pennsylvania State Police v. Pennsylvania State Troopers Ass'n*, 698 A.2d 688 (Pa.Cmwlth.1997) (*Smith*) and *Pennsylvania State Police v. Pennsylvania State Troopers Ass'n*, 698 A.2d 686 (Pa.Cmwlth.1997) (*Johnson*), the PSP first invited us to expand narrow certiorari to include review under the "manifestly unreasonable" doctrine.[8]

6. Minor deviations for leisure do not break the chain of conduct in the "course of employment." *See generally Workmen's Comp. Appeal Bd. v. Borough of Plum,* 20 Pa.Cmwlth. 35, 340 A.2d 637 (1975).

7. Under the "essence" test, the court must determine whether the issue is properly defined within the terms of the CBA. If the issue is embraced by the CBA, the award will be upheld if the arbitrator's interpretation can

be rationally derived from the CBA. *Se. Pa. Transp. Auth. v. Transp. Workers Union of Am., Local 290,* 880 A.2d 731 (Pa.Cmwlth. 2005). The court will only vacate the arbitrator's award where it is without foundation in, or fails to logically flow from, the CBA. *Id.*

8. This doctrine held it was unreasonable to conclude a public employer bargained away its absolute responsibility to ensure the integrity of its agency where an employee engaged

Trooper Smith, while off-duty and intoxicated, assaulted his former girlfriend and threatened to kill her. Smith pled guilty to several criminal charges. The PSP discharged Smith, who filed a grievance alleging his dismissal was improper. The arbitrator sustained Smith's grievance on the ground the PSP merely suspended other troopers for more egregious conduct.

Trooper Johnson was arrested on charges of retail theft. The PSP discharged Johnson, who, like Smith, filed a grievance. The arbitrator similarly found that although Johnson committed the acts in question, dismissal was inappropriate where other troopers who committed more egregious conduct received less severe discipline.

On appeal, the PSP argued narrow certiorari should be expanded to include review of those matters which are manifestly unreasonable and contrary to public policy. Although this Court was offended by the arbitrator's decision to reinstate the troopers given their illegal conduct, we nevertheless adhered to the Supreme Court's interpretation of narrow certiorari in *Betancourt*.

The PSP appealed to the Supreme Court, which affirmed our orders in a consolidated decision. In refusing to expand narrow certiorari to include review of matters that are contrary to public policy or shock the conscience of the court, the Court explained:

> Broadening the narrow certiorari scope of review to include a provision which would allow the courts to interfere with an arbitrator's award whenever that award could be deemed to be violative of "public policy"—however that nebulous

concept may be defined by a particular appellate court—would greatly expand the scope of review in these matters. If we were to adopt the [PSP]'s recommendation to include this ill-defined term within the narrow certiorari scope of review, we would markedly increase the judiciary's role in Act 111 arbitrations awards. This would undercut the legislature's intent of preventing protracted litigation in this arena.

> We emphasize that these matters are not, as the [PSP] implies, about whether this court finds the reinstatement of these troopers to be repugnant. Rather, they concern the application of existing legislation. If we were to broaden the narrow certiorari scope of review to the extent propounded by the [PSP], we would not be interpreting Act 111 but rather would be rewriting it. Clearly, such a legislative function is denied to the judiciary.

*Smith & Johnson*, 559 Pa. at 593–94, 741 A.2d at 1252–53 (footnotes omitted).

■ In light of the Supreme Court's decision, we must continue to review arbitration awards under Act 111 by considering only questions concerning the arbitrator's jurisdiction; the regularity of the proceedings; an excess of the arbitrator's powers; and the deprivation of constitutional rights. *Id.; Betancourt.* "For a grievance arbitrator to exceed his or her authority, the arbitrator would have to either mandate an illegal act or grant an award that addresses issues beyond the scope of the [CBA] or that extends beyond the terms and conditions of the employment." *Twp. of Ridley v. Fraternal Order of Police Lodge No. 27*, 718 A.2d 872, 874

in outrageous conduct, which may or may not have been criminal in nature, toward a specific group of citizens. Thus, an arbitrator had to uphold the employer's disciplinary action once a finding of just cause was made. *Smith*, 698 A.2d at 687 n. 2. However, in *State*

*System of Higher Education (Cheyney University) v. State College University Professional Ass'n (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999), the Supreme Court rejected the "manifestly unreasonable" standard of the "essence" test.

(Pa.Cmwlth.1998). Given our limited review, we may not question the reasonableness of an arbitrator's interpretation of the CBA. *Id.*

Here, the PSP does not challenge the arbitrator's jurisdiction or the regularity of the proceedings, nor does it suggest a deprivation of constitutional rights. Rather, the PSP contends the arbitrator exceeded his authority because his order

> flies in the face of the clear language of the [CBA] (i.e., the Commonwealth could never have intended to include an illegal act, such as that committed by Cpl. Vazquez, in the definition of acts "arising from the performance of duties", as that phrase is used in Art. 27). The order of the arbitrator also exceeded his authority in that it orders the spending of public funds for a trooper who has committed an assault, in a civil case that would not have been filed but for the trooper's unlawful acts.

PSP's Br. at p. 10.

The problem with this contention, as the arbitrator recognized, lies with the CBA's language. Nearly every conceivable act, no matter how outrageous and offensive to society, may fall within the broad interpretation of "arising from the performance of his/her duties" so long as it occurs while a member is on duty or is in furtherance of his/her job. The CBA does not define "arising in the performance of his/her duties" or disqualify certain actions from receiving representation. Where the offensive conduct can arguably be connected to work activities, the PSP is required to provide counsel.

Furthermore, the arbitrator's award does not require the PSP to perform an illegal act by mandating the PSP to use public funds to pay Vazquez's counsel fees. The PSP agreed to do so in Article 27, and any payments made pursuant thereto necessarily involve the expenditure of public funds.

We cannot ignore the Supreme Court's refusal to expand narrow certiorari, especially as it is based in the General Assembly's expressed intent. Because the arbitrator's award does not require the PSP to perform an illegal act or extend beyond the terms and conditions of employment, we must affirm. *Smith & Johnson; Betancourt.*

Judge McGINLEY concurs in the result only.

### ORDER

AND NOW, this 30th day of June, 2006, the order of the arbitrator in the above-captioned matter is **AFFIRMED.**

CONCURRING OPINION BY
President Judge COLINS.

I concur in the opinion of the majority. However, I must comment that, since our Supreme Court has given carte blanche to arbitrators in grievance arbitrations such as the instant one, our Court has no alternative other than to affirm the decision of the arbitrator.